**GORDON–MAIZEL CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**LEROY PRODUCTIONS, INC., et al., Defendants,**

v.

**KRICK PLUMBING & HEATING COMPANY, INC., Counterclaim Defendant.**

Civ. A. No. 86–720.

United States District Court, District of Columbia.

March 27, 1987.

Gerald I. Katz, Mark J. Stone, Vienna, Va., for plaintiff.

Barbara E. Bergman, Washington, D.C., Franklin E. Tretter, New York City, for LeRoy Prod./Cafe Partners.

Daniel M. Litt, Douglas B. Mishkin, Washington, D.C., for Krick.

S. Scott Morrison, Washington, D.C., for Washington Harbour Assoc.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motions of several of the parties. Defendants LeRoy Productions, Inc., and Cafe Partners/Washington 1983 (Cafe Partners) have moved to stay all proceedings in the case pending private arbitration of the underlying dispute pursuant to the terms of a construction contract between Cafe Partners and plaintiff Gordon-Maizel Construction Company, Inc. (Gordon-Maizel). Cafe Partners also has moved for partial summary judgment on its counterclaims against Gordon-Maizel. Additionally, defendants Washington Harbour Associates Limited Partnership, CSX Resources, Inc.—Georgetown, Potomac Commons Limited, Herbert S. Miller, Richard L. Kramer, and Gerald L. Dillon (Washington Harbour Associates) have filed motions to dismiss and for a protective order. Defendant Georgetown Potomac Company has filed a joint motion to dismiss the complaint, and Georgetown Potomac Company also has filed a motion to dismiss. Finally, Gordon-Maizel seeks to compel discovery from Washington Harbour Associates.

### · Facts

This dispute arose during the construction of a restaurant, known as Potomac on the River at Washington Harbour, in the Georgetown area of Washington, D.C. In 1983, Cafe Partners, a New York limited partnership whose general partner is LeRoy Productions, Inc., signed a lease agreement under which Cafe Partners was to construct and operate an exclusive restaurant within a commercial real estate development known as Washington Harbour. Cafe Partners' landlord, and the developer of the Washington Harbour project, is Washington Harbour Associates, a District of Columbia limited partnership whose general partners are CSX Resources, Inc.—Georgetown, Potomac Commons Limited, Herbert S. Miller, Richard L. Kramer, and Gerald L. Dillon. The real property on which the Washington Harbour project is built is owned by the Georgetown Potomac Company. Under the terms of the lease, Cafe Partners granted Washington Harbour Associates a substantial role in the selection of a construction contractor and the supervision of the work. In exchange, Washington Harbour Associates agreed to

provide $1,074,474 toward the costs of construction and to perform certain work necessary to incorporate the restaurant into the Washington Harbour project.

In June of 1985, Cafe Partners hired Gordon-Maizel to act as the general contractor in the restaurant construction and agreed to pay $1,344,240 for the work. Gordon-Maizel, in turn, subcontracted with Krick Heating & Plumbing Company (Krick) for installation of the heating, ventilation, air conditioning, and plumbing systems. The general contract included a provision allowing Cafe Partners to terminate the contract for "landlord related causes," and another provision requiring all subcontracts to incorporate the terms of the general contract.

Construction commenced in the summer of 1985 and was suspended in November of that year. Disputes between the parties had arisen over the adequacy of designs for the heating and ventilation system, and Cafe Partners and Washington Harbour Associates had disagreed on their respective responsibilities under the lease. In December 1985, Cafe Partners notified Gordon-Maizel that it was terminating the general contract under the "landlord related causes" provision. Construction eventually resumed under the supervision of a different general contractor.

Although Gordon-Maizel has submitted a number of invoices, Cafe Partners had made no payments to Gordon-Maizel since construction was halted in November 1985. On December 23, 1985, Krick filed notice of a mechanic's lien on Cafe Partners' property in the amount of $185,000. On January 2, 1986, Gordon-Maizel filed notice of a mechanic's lien on the restaurant property against Cafe Partners in the amount of $461,180. Throughout February 1986, Gordon-Maizel and Cafe Partners engaged in unsuccessful efforts to negotiate a settlement. On March 11, 1986, Gordon-Maizel filed notices of mechanic's liens in the amount of $740,587 against both Cafe Partners and Washington Harbour Associates, and on March 17, 1986, Gordon-Maizel filed

suit in this Court to enforce those liens through judicially-ordered sales of the liened property.

In its answer, Cafe Partners asserted counterclaims against Gordon-Maizel and Krick seeking to vacate the mechanic's liens, compel arbitration of the contract dispute, and recover damages for fraudulent filing of mechanic's liens.[1]

## Discussion

### I. Cafe Partners' Motion To Compel Arbitration

The general contract executed by Cafe Partners and Gordon-Maizel includes a broad arbitration clause, § 7.9.1, which provides in relevant part:

> All claims, disputes and other matters in question between the contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

Cafe Partners argues that the underlying dispute over the suspension of construction and subsequent termination of the general contract is just the sort of dispute that should be submitted to private arbitration under the terms of § 7.9.1. Cafe Partners further argues that all proceedings in this case, including discovery, should be stayed pending arbitration.

This Court's treatment of private arbitration agreements is guided by the Federal Arbitration Act (the Act), 9 U.S.C. §§ 1–14. Under § 2 of the Act, federal courts are to treat such agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Act also provides that if a party to such an agreement seeks to avoid arbitration by filing suit in a federal court, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit is refer-

---

1. With leave of the Court, Gordon-Maizel filed an amended complaint on May 13, 1986. Refer-
ence herein to Cafe Partners' answer or counterclaims relate to the amended complaint.

able to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Gordon-Maizel challenges neither the applicability of the Act, nor the arbitrability of the underlying dispute between plaintiff and Cafe Partners. Instead, Gordon-Maizel argues that Cafe Partners has waived its right to demand arbitration, and that reference to arbitration would constitute a waste of judicial resources. Neither argument is persuasive.

The federal courts have construed the final clause of 9 U.S.C. § 3, *supra,* to foreclose a court from ordering a stay pending arbitration when the applicant "actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell & Co., Inc. v. Barber & Ross Co.,* 360 F.2d 512, 513 (D.C.Cir.1966) (per curiam); *see also Fisher v. A.G. Becker Paribus Inc.,* 791 F.2d 691, 694 (9th Cir.1986); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985). However, the Act evidences a strong federal policy favoring arbitration agreements, and therefore "any doubts concerning the scope of arbitrability should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (footnote omitted); *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985).

■ In this case, Cafe Partners has consistently maintained that the issues relating to termination of the general contract should be referred to arbitration. The duty to arbitrate was raised as an affirmative defense in Cafe Partners' answer, and was raised in a separate motion to stay pending arbitration which was filed along with the answer. The mere fact that Cafe Partners answered the complaint, rather than risk a default judgment, in no way constitutes the degree of "active participation" in litigation necessary to establish waiver. *See, e.g., Rush,* 779 F.2d at 889. Absent substantial delay in asserting the contractual right to arbitrate, or other prejudicial conduct on the part of Cafe Partners, a finding of waiver would be inappropriate. *Fisher,* 791 F.2d at 694; *Rush,* 779 F.2d at 889. In short, the provisions of the Act entitle Cafe Partners to the benefit of its bargain with Gordon-Maizel. *See Lee v. Ply*Gem Industries,* 593 F.2d 1266, 1275 (D.C.Cir.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *cf. Dean Witter,* 470 U.S. at 220, 105 S.Ct. at 1242 ("passage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered").

■ Gordon-Maizel's secondary argument—that reference to arbitration should be denied as wasteful and inefficient—may be summarily dismissed, for once the Court determines that the applicant has a contractual right to arbitration, it must stay the civil action. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration...." *Dean Witter,* 470 U.S. at 218, 105 S.Ct. at 1241 (emphasis in original). Thus, the issue of judicial expediency is irrelevant to the analysis.

Accordingly, the Court holds that Cafe Partners is entitled to a stay of the proceedings pending arbitration pursuant to the terms of the general construction contract. Moreover, although Krick is not a formal party to the arbitration agreement, the fact that its claim against Cafe Partners largely depends upon the validity of Gordon-Maizel's claims leads the Court to conclude that proceedings with respect to its claims should be stayed as well. *See Moses H. Cone Memorial Hospital,* 460 U.S. at 20 n. 23, 103 S.Ct. at 939 n. 23.[2]

---

**2.** Cafe Partners has also moved for a protective order, under which Cafe Partners would not have to respond to discovery requests until arbitration is complete. The Court's consideration

## II. *Cafe Partners' Motion for Partial Summary Judgment*

Also pending is a motion by Cafe Partners for partial summary judgment on its counterclaims against Gordon-Maizel. Specifically, Cafe Partners asks the Court to vacate Gordon-Maizel's second mechanic's lien, in the amount of $740,587, contending that it is both untimely filed and unnecessary to secure any possible judgment that Gordon-Maizel may obtain in this matter. Although it is possible that the Court could decide this motion without reaching the merits of the issue to be resolved through arbitration, the Court's responsibility to stay proceedings pending arbitration requires it to postpone action on Cafe Partners' partial summary judgment motion as well. The purpose of the Act was to minimize judicial involvement prior to completion of the contractually-agreed upon arbitration process. *Moses H. Cone Memorial Hospital*, 460 U.S. at 23, 103 S.Ct. at 941. Although it is unfortunate that Gordon-Maizel's disregard for its duty to arbitrate has, to an extent, denied Cafe Partners the expeditious private resolution for which it bargained, it would be improper for this Court to proceed on Cafe Partners' claims while staying action on those of the other parties.

## III. *Washington Harbour Associates' Motions To Dismiss*

Prior to Gordon-Maizel's filing of an amended complaint, defendants Washington Harbour Associates Limited Partnership, CSX Resources, Inc.—Georgetown, Potomac Commons Limited, Herbert S. Miller, Richard L. Kramer, Gerald L. Dillon, and Georgetown Potomac Company (Washington Harbour Associates) jointly moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to allege facts sufficient to establish Washington Harbour Associates' liability for Cafe Partners' alleged breach of the general contract. With leave of the Court, Gordon-Maizel amended its complaint to add the necessary allegations and, with the exception of defendant Georgetown Potomac Company (Georgetown Potomac), Washington Harbour Associates has not moved to dismiss the amended complaint. Accordingly, the Court will deny as moot Washington Harbour Associates' motion to dismiss.

Georgetown Potomac has moved to dismiss the amended complaint on the ground that Gordon-Maizel wrongly included it among the general partners of Washington Harbour Associates Limited Partnership. Gordon-Maizel's counter-argument is that while Georgetown Potomac may not be a general partner in Washington Harbour Associates, it is the owner of record of the property upon which the Washington Harbour complex was built. Gordon-Maizel's mechanic's lien on the Washington Harbour property (one of three mechanic's liens that Gordon-Maizel seeks to enforce in this action) lists Georgetown Potomac as the owner of record, and was attached to the complaint as an exhibit thereto. Apparently, at the time Gordon-Maizel filed its complaint, it failed to understand fully the intricate ownership and leasing relationships that join the defendants in this case. Although plaintiff may have misunderstood Georgetown Potomac's role in the Washington Harbour development, Georgetown Potomac's ability to participate competently in this litigation has not been prejudiced, and the argument for dismissal falls far short of establishing "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). Accordingly, Georgetown's motion to dismiss is denied.

### *Conclusion*

The Court concludes that defendants' pending motions to dismiss should be denied, and that all further proceedings in this matter should be stayed pending arbitration pursuant to the terms of the con-

and resolution of this motion is subsumed within its consideration of Cafe Partners' motion for

a stay pending arbitration.

struction contract between Cafe Partners and Gordon-Maizel. An Order to that effect accompanies this Memorandum Opinion.

## ORDER

This matter is before the Court on a number of motions explained in the accompanying Memorandum Opinion. Upon consideration of the parties' submissions and the entire record, for the reasons stated in the accompanying Memorandum Opinion the Court concludes that defendants' motions to dismiss should be denied and that all other proceedings in this matter should be stayed pending the completion of private arbitration of the underlying dispute. Accordingly, it hereby is

ORDERED, that the motion to dismiss of defendants Washington Harbour Associates Limited Partnership, CSX Resources, Inc.—Georgetown, Georgetown Potomac Company, Potomac Commons Limited, Herbert S. Miller, Richard L. Kramer, and Gerald L. Dillon is denied. It hereby further is

ORDERED, that defendant Georgetown Potomac Company's motion to dismiss is denied. It hereby further is

ORDERED, that the motion to stay of defendants Cafe Partners/Washington 1983 and LeRoy Productions, Inc. (Cafe Partners) is granted. All proceedings in this matter, including discovery, are stayed pending private arbitration pursuant to the general contract executed by Cafe Partners and plaintiff Gordon-Maizel Construction Company, Inc. (Gordon-Maizel). Cafe Partners and Gordon-Maizel shall, within 14 days of the issuance of an arbitration decision, inform the Court in writing of the status of the case. It hereby further is

ORDERED, that Cafe Partners' motion for a protective order and supplemental motion for a protective order are denied as moot. It hereby further is

ORDERED, that Gordon-Maizel's motion to compel discovery is denied as moot. It hereby further is

ORDERED, that Washington Harbour Associates' motion for a protective order is denied as moot. It hereby further is

ORDERED, that the request for a status conference of Gordon-Maizel and counter-defendants Marvin Maizel and Steven Gordon is denied.

SO ORDERED.