**HERCULES & COMPANY, LTD., Appellant,**

**v.**

**BELTWAY CARPET SERVICE, INC., Appellee.**

**No. 90-324.**

District of Columbia Court of Appeals.

Submitted Dec. 12, 1990.
Decided June 21, 1991.

---

William J. Carter was on the brief, for appellant.

No brief was filed on behalf of appellee. Richard C. Daniels entered an appearance for appellee.

Before TERRY, FARRELL, and WAGNER, Associate Judges.

TERRY, Associate Judge:

Beltway Carpet Service and its president, Richard Nowell, filed this action against Hercules & Company, one of Hercules' corporate officers, and a Hercules employee. Count I of the complaint alleged that Beltway and Hercules had entered into a written contract under which Beltway would install carpets as Hercules' subcontractor on a construction project. Beltway claimed that Hercules had breached this contract by failing to pay it for goods and services which it had rendered to Hercules under the contract.[1]

Hercules filed an answer denying the breach, along with a separate motion to dismiss count I of the complaint. In the latter motion Hercules pointed out that the contract between it and Beltway contained an arbitration clause, under which Beltway had agreed that all disputes arising out of the contract would be settled by arbitration.[2] Hercules contended that, because of the arbitration clause, a trial on count I was barred and that count I of the complaint should therefore be dismissed.[3] Beltway opposed the motion to dismiss,

---

1. Counts II and III of the complaint sought damages from the other two defendants for their alleged assault and battery of Mr. Nowell, Beltway's president, at Hercules' offices. In count IV Mr. Nowell sought damages from Hercules for the same assault and battery under a theory of *respondeat superior*. Those claims are not before us on this appeal.

2. Paragraph 12 of the contract provided in pertinent part: "All Subcontractor's [Beltway's] disputes with the Contractor [Hercules] shall only be resolved by arbitration in accordance with the rules of the American Arbitration Association, solely at the Subcontractor's expense."

3. Hercules also filed its first set of interrogatories and document requests along with its answer. Some of the interrogatories were directed to Beltway's contract claim, but most had to do with the assault and battery claims. These interrogatories were never answered and were later withdrawn.

contending that Hercules, by "waiting until after the institution of this litigation to assert its right to arbitration," had waived that right.

In its reply to Beltway's opposition, Hercules noted that it had filed its motion to dismiss contemporaneously with its answer and had therefore asserted its right to arbitration in its first responsive pleading. Hercules also argued that its motion to dismiss should be treated as a motion to compel arbitration under D.C.Code § 16–4302(a) (1989). Finally, Hercules maintained that the arbitration clause divested the trial court of subject-matter jurisdiction over the contract claim.

■ The trial court denied the motion to dismiss count I, holding that Hercules, "having failed to raise the jurisdictional defense in [its] answer, [had] therefore ... waived the defense by participating in this litigation...." Hercules moved for reconsideration. That motion was also denied, but in its order the court agreed that Hercules had preserved its jurisdictional defense by filing the motion to dismiss contemporaneously with its answer.[4] Nevertheless, the court adhered to its earlier ruling that Hercules had waived its right to arbitration by participating in the litigation, noting in particular that Hercules had also filed a motion for summary judgment (with respect to the other counts in the complaint), as well as interrogatories. The court concluded that Hercules had "clearly showed an intent to vigorously participate in this litigation" and had therefore waived its jurisdictional defense. Hercules thereupon noted this appeal. We reverse.

## I

■ At the outset we must deal with an obvious jurisdictional issue. Ordinarily,

the denial of a motion to dismiss a complaint—or, in this instance, one count of a multi-count complaint—is not a final and appealable order. *Crown Oil & Wax Co. v. Safeco Insurance Co.*, 429 A.2d 1376, 1379 (D.C.1981) (citing cases). The District's arbitration act, however, creates an exception to this general rule, and we conclude that this case fits within the exception.

A party to an arbitration agreement may, upon the other party's refusal to arbitrate, move for an order compelling arbitration. D.C.Code § 16–4302(a) (1989) provides in pertinent part:

> On application of a party showing an [arbitration agreement], and the opposing party's refusal to arbitrate, the Court shall order the parties to proceed with arbitration....[5]

Under another provision of the arbitration act, the denial of a motion to compel arbitration under this provision "shall be deemed final" for purposes of an appeal. D.C.Code § 16–4317(a)(1) (1989).[6] Because Hercules' motion to dismiss count I "must be seen as" a motion to compel arbitration, *Robinson v. Booker*, 561 A.2d 483, 484 (D.C.1989), we hold that its denial is immediately appealable under D.C.Code § 16–4317 and that we therefore have jurisdiction to entertain this appeal.

In *Robinson v. Booker, supra*, the defendant moved to dismiss the plaintiff's complaint on the ground that the court lacked jurisdiction to hear the case because the contract at issue required that all disputes be referred to arbitration. The trial court denied the motion to dismiss, subject to reconsideration if the defendant met certain conditions. The defendant did not appeal from that order, but attempted to submit the dispute to arbitration. The American Arbitration Association, however, de-

---

4. This ruling was clearly correct. *See Beary v. West Publishing Co.*, 763 F.2d 66, 68 (2d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 231 (1985); 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1361 (2d ed. 1990) ("should defendant file a Rule 12(b) motion simultaneously with his answer, the court will view the motion as having preceded the answer and thus as having been interposed in a timely fashion").

5. The federal arbitration act contains a similar provision. *See* 9 U.S.C. § 4 (1988).

6. Congress recently added a similar provision to the federal arbitration act. Pub.L. No. 100–702, § 1019(a), 102 Stat. 4670 (1988) (codified at 9 U.S.C. § 15(a)(1)(B) (1988)).

clined to accept the dispute because it did not meet certain procedural requirements. Thus the defendant was unable to submit the case to arbitration and suffered a default in the trial court. Super.Ct.Civ.R. 55(a). The defendant moved to vacate the default, but the court denied the motion as well as a later motion for reconsideration. The defendant appealed from the latter denial, but this court dismissed the appeal for lack of jurisdiction, noting that the defendant had not appealed from the original denial of the motion to dismiss, and holding that the appeal from the order denying the motion for reconsideration was untimely because that ruling "did not constitute the denial itself, nor did it revive an appeal right foregone." 561 A.2d at 484.

■ Significant for the present case was the *Robinson* court's statement that the original motion to dismiss on the ground that the contract compelled arbitration "must be seen as [an] application [to compel] arbitration.... It was this ... order [denying the motion to dismiss], therefore, and not the order of default, which constituted the denial of compelled arbitration subject to an immediate right of appeal under D.C.Code § 16–4317." *Id.* Although this language was technically dictum in *Robinson*, we think it is a correct statement of the law and adopt it as such. We hold accordingly that the denial of a motion to dismiss a complaint, or any count thereof, alleging a breach of contract, on the ground that the contract requires arbitration, is immediately appealable under D.C.Code § 16–4317. It follows that we have jurisdiction to hear and decide this appeal.

II

■ Under the District of Columbia arbitration act, a written agreement to arbitrate future disputes arising out of an existing contract "is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C.Code § 16–4301 (1989). The federal arbitration act contains materially identical language. 9 U.S.C. § 2 (1988). The Supreme Court has held that the federal arbitration act "[b]y its terms ... leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). The District of Columbia Circuit has held that "when the parties *have* provided that a particular type of dispute should be settled in arbitration, rather than in litigation, a court may not override that agreement by itself deciding such a dispute." *National Railroad Passenger Corp. v. Boston & Maine Corp.*, 271 U.S. App.D.C. 63, 66, 850 F.2d 756, 759 (1988) (emphasis in original); *accord, Huntington Alloys, Inc. v. United Steelworkers Local 40*, 623 F.2d 335, 338 (4th Cir.1980); *Gordon–Maizel Construction Co. v. Leroy Productions, Inc.*, 658 F.Supp. 528, 531 (D.D.C.1987) (under federal act, trial court has no discretion not to order parties to an arbitration agreement to proceed to arbitration). Once a determination is made that a dispute is subject to arbitration under the federal act, a trial court can do nothing further on the merits of the case except to compel arbitration and stay the court proceedings until the arbitration has ended. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Thomson*, 574 F.Supp. 1472, 1478 (E.D.Mo.1983).

■ All of these cases, admittedly, arise under the federal arbitration act. Nevertheless, we find them persuasive authority for our interpretation of D.C.Code § 16–4302(a), which, like the federal act, states that the trial court "shall order the parties to proceed with arbitration" upon a showing that an arbitration agreement exists. The federal arbitration act is "substantially similar" to the District's act, COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON JUDICIARY AND CRIMINAL LAW, REPORT ON BILL NO. 1–140, at 3 (1976) (hereafter COMMITTEE REPORT), except that it applies only to contracts involving maritime transactions or interstate commerce. 9 U.S.C. § 2 (1988); *see Thompson v. Lee,*

589 A.2d 406, 410 (D.C.1991). Because the federal act does not cover all arbitration agreements in the District of Columbia, our legislature enacted its own statute to "complement" the federal act. COMMITTEE REPORT, *supra*, at 3. Given this legislative intent, we hold that federal court decisions construing and applying the federal arbitration act may be regarded as persuasive authority in construing and applying the corresponding provisions of the District of Columbia arbitration act, so long as there is no material difference in the statutory language between the two acts. *See, e.g., Vale Properties, Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 13 n. 3 (D.C.1981) (when federal rule and local rule are the same, federal court decisions interpreting federal rule are "persuasive authority" in interpreting local rule (citations omitted)).

█ D.C.Code § 16–4302(d) (1989) provides that any court proceeding involving an issue subject to arbitration "shall be stayed" if one of the parties has sought an order compelling arbitration. We have held in part I of this opinion that Hercules' motion to dismiss must be treated as a motion to compel arbitration under section 16–4302(a). Therefore, if the dispute at issue in count I of Beltway's complaint is subject to arbitration, it follows that the trial court should have stayed the litigation with respect to that count, *i.e.*, that it should have granted Hercules' motion, unless there was some other reason to deny it.[7]

█ It is uncontested that the contract between Beltway and Hercules contained a provision requiring arbitration of all disputes arising under the contract. See note 2, *supra*. This provision gave Hercules a right to compel arbitration under D.C.Code § 16–4301. The right to compel arbitration, however, can be waived like any other contract right. *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 261 U.S.App.D.C. 284, 286, 821 F.2d 772, 774 (1987); *Cornell & Co. v. Barber & Ross Co.*, 123 U.S.App.D.C. 378, 379, 360

F.2d 512, 513 (1966). The trial court ruled that Hercules had waived its right to arbitration by "participating" in this litigation. Hercules contends that this ruling was error and reminds us that "[t]he question of waiver is one of law, which we review *de novo.*" *National Foundation, supra,* 261 U.S.App.D.C. at 286, 821 F.2d at 774 (citations omitted). The test for determining whether there has been a waiver of the right to arbitration is "whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Id.* (citation omitted). If there is any ambiguity as to the scope of the waiver, we must resolve the ambiguity in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983). To the waiver issue, therefore, we now turn our attention.

### III

In *National Foundation, supra,* the plaintiff opened a securities account with the defendant, a brokerage firm. The customer agreement provided that certain disputes between the two parties would be settled by arbitration, but specifically excluded any claims arising under the federal securities laws. After a dispute arose over the handling of the account, the plaintiff filed suit against the defendant, alleging both common law and federal securities law violations. After two years of extensive discovery by both sides, the plaintiff amended its complaint to add a count under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968 (1988). The defendant then moved for summary judgment on all but one of the eleven counts in the complaint, but the District Court denied the motion and set the case for trial. At that point, some three and a half years after the filing of the complaint, the defendant first requested arbitration of the claims that were subject to the arbitration clause. When the

---

7. The granting of the motion to "dismiss" would not have resulted in the dismissal of count I, but rather in a stay of the litigation as to that claim, pending the outcome of arbitration. *See Interstate Securities Corp. v. Siegel,* 676 F.Supp. 54, 55 (S.D.N.Y.1988).

plaintiff turned down the request, the defendant filed a motion to compel arbitration. The trial court denied the motion, ruling that the defendant had waived its right to demand arbitration.

The Court of Appeals affirmed that denial, holding that the defendant's conduct "was clearly inconsistent with any intent to assert its right to arbitrate." 261 U.S.App. D.C. at 287, 821 F.2d at 775. The court noted that the defendant had participated in extensive discovery, but held that it should not infer waiver from this fact alone, since the suit also involved non-arbitrable claims on which the defendant had a right to conduct discovery. However, the defendant had also sought summary judgment on the arbitrable as well as the non-arbitrable claims, and thus, in the court's view, "had made a conscious decision to exploit the benefits of pretrial discovery and motion practice, with relation to the arbitrable claims, that were fully available to it only in the judicial forum. . . ." *Id.* at 288, 821 F.2d at 776. The court concluded that the defendant's "extended silence" and "much delayed demand for arbitration" showed that it had "made a conscious decision to continue to seek judicial judgment on the merits of [the plaintiff's] arbitrable claims." *Id.* at 289, 821 F.2d at 777. The court therefore sustained the trial court's finding of waiver and affirmed the denial of the motion to compel arbitration.[8]

■ The case before us is different. Unlike the defendant in *National Foundation,* Hercules did not delay in asserting its right to arbitration, but raised the issue in its first pleading. The trial judge recognized this, but nonetheless held that Hercules had waived its right to seek arbitration

by filing interrogatories and a motion for summary judgment. We cannot agree.

In contrast to *National Foundation,* there is nothing in the record of this case to suggest that Hercules "made a conscious decision to exploit the benefits of pretrial discovery and motion practice. . . ." *Id.* at 288, 821 F.2d at 776. As we pointed out earlier, see note 1, *supra,* Beltway's complaint contained allegations of assault and battery in addition to the arbitrable claim of breach of contract. Because Hercules was entitled to discovery on the non-arbitrable counts of the complaint, waiver cannot be inferred from the fact that Hercules filed interrogatories seeking discovery on those non-arbitrable claims. *See id.* at 287, 821 F.2d at 775.[9]

As for Hercules' motion for summary judgment, the trial judge recognized that it related only to the other counts in the complaint, but ignored that fact when he ruled that Hercules had waived its right to seek arbitration. We rely once again on *National Foundation* in concluding that this ruling was error. The court in *National Foundation* held that the defendant had waived its right to arbitration by moving for summary judgment on both the arbitrable and the non-arbitrable claims of the plaintiff, thereby choosing "to have the substance of [the plaintiff's] arbitrable claims decided by a court. This election was wholly inconsistent with an intent to arbitrate and constituted an abandonment of the right to seek arbitration." *Id.* at 288, 821 F.2d at 776 (citations omitted). In the instant case, by contrast, Hercules made no such election. The only claim on which it sought summary judgment was

---

**8.** The defendant in *National Foundation,* citing decisions from other circuits, argued that prejudice to the objecting party was a prerequisite to a finding of waiver and that the plaintiff had not demonstrated prejudice. *See Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir. 1985). The court rejected this argument, pointing out that it had "never included prejudice as a separate and independent element of the showing necessary to demonstrate waiver of the right to arbitration." *National Foundation, supra,* 261 U.S.App.D.C. at 289, 821 F.2d at 777, citing *Cornell & Co. v. Barber & Ross Co., supra.* The court agreed that prejudice was a relevant

factor for it to consider in ruling on a claim of waiver, but held that it could find waiver without a showing of prejudice. *Id.* Although we need not resolve this split in the circuits here, since we conclude that there was no waiver in any event, we note that the *Cornell* case, cited in *National Foundation* on this point, is binding on us under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

**9.** Furthermore, Hercules derived no benefit from its discovery requests, but withdrew them before Beltway responded.

that contained in count IV of the complaint, which was not subject to the arbitration clause in the contract. Hercules was within its rights in seeking summary judgment on this count; indeed, public policy favors disposing of issues summarily, if possible. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The trial judge's conclusion that Hercules' filing of a motion for summary judgment on a *non-arbitrable* count of the complaint constituted a waiver of its right to demand arbitration was therefore erroneous.

 We close with the general observation that because arbitration is highly favored, a court should be cautious in concluding that a party to an agreement which includes an arbitration clause has waived his or her right to arbitration. We note, in particular, that mere "participation" in a lawsuit is probably not enough to support a finding of waiver. Case law under the federal act, which we adopt for the District of Columbia act, requires "active" participation or "other action inconsistent with [the] right" to arbitration, *Cornell & Co. v. Barber & Ross Co., supra,* 123 U.S.App. D.C. at 379, 360 F.2d at 513, before a waiver may be found. Thus, for example, the filing of an answer to avoid the risk of a default judgment "in no way constitutes the degree of 'active participation' in litigation necessary to establish waiver." *Gordon–Maizel Construction Co. v. Leroy Productions, Inc., supra,* 658 F.Supp. at 531 (citation omitted); *see also Rush v. Oppenheimer & Co., supra* note 8, 779 F.2d at 888–889 (no waiver based on filing of motion to dismiss under Rule 12(b)(6) or on discovery as to non-arbitrable claims). Claims of waiver should be viewed with skepticism and should be sustained only when the evidence of waiver is substantially stronger than it is in this case.

## IV

We hold that the trial court should have treated Hercules' motion to dismiss count I of the complaint as a motion to compel arbitration, pursuant to D.C.Code § 16–4302. The court's denial of that motion was error because it was based on the erroneous conclusion that Hercules had waived its right to seek arbitration. We therefore reverse the order denying Hercules' motion and remand the case for the entry of an order compelling Beltway and Hercules to submit count I of the complaint to arbitration in accordance with their agreement, D.C.Code § 16–4302(a), and staying the present litigation with respect to count I pending the outcome of the arbitration proceedings. We leave it for the trial court to decide, in its discretion, whether the case should be stayed as to the remaining counts as well. D.C.Code § 16–4302(d).

*Reversed and remanded.*