**Carlos GIRON, et al., Appellants,**

**v.**

**John DODDS, et al., Appellees.**

**No. 11–CV–37.**

District of Columbia Court of Appeals.

Argued Dec. 1, 2011.

Decided Jan. 5, 2012.

---

Pearl Keng for appellants.

David B. Lamb, Washington, DC, for appellees.

Before GLICKMAN and OBERLY, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

This dispute arises out of the efforts of appellees John and Teresa Dodds to collect an arbitration award from C & C General Builders, Inc., a construction company with which the Dodds contracted for demolition and renovation work. After obtaining an arbitration judgment in their favor and then learning that C & C would be unable to pay the award, the Dodds brought a claim seeking to pierce C & C's corporate veil to reach C & C's alleged shareholders, Carlos and Alex Giron (see note 4, *infra*). The Girons moved to compel arbitration of this claim, and the trial court denied their motion. This appeal followed. Finding no error, we affirm.

## I. Facts and Procedural History

In March 2007, John and Teresa Dodds entered into a contract with C & C General Builders, Inc. (C & C) for the demolition and renovation of a residential building the Dodds owned in Northwest Washington, D.C. C & C is a construction company run by Carlos Giron and his son, Alex Giron, C & C's president and vice president, respectively. Article 9 of the contract between the Dodds and C & C contains an arbitra-

tion clause, providing: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

Under the contract, the Dodds were required to make weekly progress payments for 23 weeks, the agreed-upon period for completing the construction. The Dodds made payments through May 3, 2008, amounting to 70 percent of the contract price. They then received a consultant report concluding that the project was only 40 percent complete and that C & C would not be able to complete it by August 2008 as scheduled. When confronted with these facts, the Girons demanded that the progress payments continue. The Dodds refused, and the Girons abandoned the job site.

In September 2008, the Dodds filed a four-count complaint against Carlos and Alex Giron as individuals, alleging breach of contract, negligent supervision of contract, breach of fiduciary duty, and slander of title. In response to the Girons' motion to compel arbitration, the Superior Court ordered the parties to proceed with arbitration and stayed the case pending the outcome of arbitration. The Dodds filed a statement of claim with the American Arbitration Association, making essentially the same allegations as those made in their original complaint. After the Girons filed a request for dismissal but before the arbitrator ruled on that request, the Dodds amended their statement of claim to add C & C as a defendant on the theory that C & C was an undisclosed principal. In an interim order, the arbitrator dismissed the claims against Carlos and Alex Giron, finding that the Dodds knew they had con-

tracted with a corporate entity and not the Girons as individuals, and thus the Girons were not parties to the arbitration agreement. The arbitrator then denied the request for summary dismissal of the Dodds' claims against C & C. The arbitrator issued a final award on July 27, 2009, finding liability on the part of C & C and awarding the Dodds $120,872.42 "as full and complete settlement of the claims of both parties." The arbitrator based the amount of the award on evidence "concerning the amount paid by the [Dodds], the extra work performed for the [Dodds], [and] the amount paid by the [Dodds] to complete the work," as well as expert testimony from both parties about the percentage of work completed at the time the Girons abandoned the project. In response to a motion filed by the Dodds to clarify the award, the arbitrator stated that "no claim was made in this arbitration concerning the piercing of a corporate shield."

On August 21, 2009, after receiving a letter from counsel for the Girons stating that C & C was "asset-less" and would not pay the award, the Dodds filed a motion in the trial court to confirm the arbitration award. Soon after, on September 20, 2009, the Dodds filed a motion for leave to file an amended complaint. Both motions were granted. In their amended complaint, the Dodds sought to pierce C & C's corporate veil and hold Carlos and Alex Giron individually liable for the award. The Dodds alleged that the Girons "treated the assets and the funds of the corporate entity as their own[,] ... failed to observe corporate formalities[,] ... intermingled corporate and personal funds and [were] now attempting to use the corporate shell to shield themselves from liability...." Specifically, the Dodds claimed that the Girons "wrongfully and fraudulently converted" for their own use the Dodds' progress payments intended to be used toward completion of the project.

The Girons filed a motion to reconsider the order granting leave to file an amended complaint or, in the alternative, to dismiss for lack of subject matter jurisdiction and failure to state a claim. The trial court denied this motion and the Girons appealed. This court dismissed the appeal as having been taken from a nonfinal order. *Giron v. Dodds,* 10–CV–1129 (D.C. Nov. 2, 2010). The Girons then filed a motion to compel arbitration for a second time, and the trial court denied that motion in a January 6, 2011 order. Relying heavily on *Schattner v. Girard, Inc.,* 668 F.2d 1366 (D.C.Cir.1981), holding that a party may, under appropriate circumstances, pierce the corporate veil to hold individuals liable for an arbitration award, the trial court concluded that the veil-piercing claim "arises out of the arbitration judgment" not the arbitration agreement in the contract, and it "did not become ripe until after the arbitration was concluded and judgment had been rendered."

The Girons appeal the trial court's denial of their motion to compel arbitration, contending that the court should have ordered the parties to proceed with arbitration because, they argue, the allegations in the amended complaint are subject to the arbitration agreement in the contract and have in fact already been decided in arbitration. The Girons further challenge the trial court's reliance on *Schattner,* arguing that its reasoning is inapplicable to the facts here.

## II. Jurisdiction and Standard of Review

■ At the outset, we note that unlike the Girons' earlier appeal from the trial court's denial of their motion to dismiss the Dodds' amended complaint, this appeal is properly before us. We have held that "the denial of a motion to compel arbitration under [the District of Columbia Uni-

form Arbitration Act] 'shall be deemed final' for purposes of an appeal." *Hercules & Co. v. Beltway Carpet Service, Inc.* 592 A.2d 1069, 1071 (D.C.1991) (quoting D.C.Code § 16–4317(a)(1) (1989)).[1] The trial court's denial of the Girons' motion to compel arbitration was "immediately appealable." *Id.*

■ Under the District's arbitration act, a written agreement to "submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." D.C.Code § 16–4406(a) (Supp. 2011). "[U]pon a showing that an arbitration agreement exists" with respect to a particular issue, *Hercules, supra,* 592 A.2d at 1072, the trial court "shall order the parties to arbitrate" and stay the court proceedings pending the outcome of arbitration. D.C.Code § 16–4407(a), (e). Once it is established that the parties intended a particular dispute to be arbitrated, "a court may not override that agreement by itself deciding such a dispute." *Hercules, supra,* 592 A.2d at 1072 (internal quotation marks omitted). Arbitrability— whether there was an agreement to arbitrate a particular dispute—is a question of law that we review *de novo. See Certain Underwriters at Lloyd's London v. Ashland, Inc.,* 967 A.2d 166, 173 (D.C.2009). The trial court's factual findings, however, we treat as true unless clearly erroneous. *See Lawlor v. District of Columbia,* 758 A.2d 964, 974 (D.C.2000).

## III. Discussion

### A. The Trial Court's Jurisdiction Over the Dodds' Amended Complaint

■ There is no dispute that a valid arbitration agreement existed between the Dodds and C & C, and on appeal neither party challenges the arbitrator's jurisdiction over the Dodds' original complaint against C & C. We consider only whether the trial court erred by asserting jurisdiction over the Dodds' amended complaint against the Girons without ordering the parties to proceed once again with arbitration.

The Girons argue that the Dodds' amended complaint is "merely a continuation" of their original complaint, which was previously ordered to arbitration, and that it therefore falls within the scope of the arbitration agreement. In support of this argument, the Girons point to several allegations that they claim are the same as those submitted in arbitration. In particular, the Girons emphasize an accusation that appeared in both the Dodds' original complaint and the amended statement of claim that the Girons "diverted funds from the progress payments for uses other than the renovations under the contract." According to the Girons, the allegations in the Dodds'' amended complaint that the Girons treated corporate assets as their own, failed to observe corporate formalities, and intermingled corporate and personal funds is just a "re-hash[ing]" of the allegation that the Girons diverted funds.

1. The District of Columbia Uniform Arbitration Act was repealed effective July 1, 2009 by D.C. Law 17–111 (2007). It was replaced— with no changes material to this case—by the Revised Uniform Arbitration Act (RUAA), which is codified in Chapter 44 of D.C.Code Title 16. The prior act was not immediately repealed, and it applied to agreements made before February 27, 2008, when the RUAA went into effect, until July 1, 2009, when the prior act ceased to apply to any agreements. *See Menna v. Plymouth Rock Assurance Corp.,* 987 A.2d 458, 462–63 (D.C.2010). We apply the RUAA to this case because "[o]n or after July 1, 2009, [the RUAA] governs an agreement to arbitrate *whenever made.*" D.C.Code § 16–4403(e) (Supp.2011) (emphasis added). We also apply our cases construing provisions of the repealed act that are not materially different from the RUAA.

The Dodds counter that their claim to impose personal liability on the Girons by piercing C & C's corporate veil does not fall within the scope of the arbitration agreement because it "arose out of the Dodds['] efforts to collect on the award" and was not cognizable before the arbitrator issued her judgment in favor of the Dodds. The Dodds argue that it was only after the Girons stated that C & C was "asset-less" and unwilling to pay the award that they were able to bring a claim to pierce C & C's corporate veil. We agree.

██ "[A]n arbitration award is not self-executing," and a party seeking to enforce it "may ask the court to confirm the award and enter judgment accordingly." *Brandon v. Hines,* 439 A.2d 496, 501, 507 (D.C.1981); *see also In re Consolidated Rail Corp.,* 867 F.Supp. 25, 31 (D.D.C. 1994) (noting that arbitration awards confirmed by courts are enforceable); *Hellman v. Program Printing, Inc.,* 400 F.Supp. 915, 917 (S.D.N.Y.1975) (asserting jurisdiction over a petition to confirm and enforce an arbitration award). Upon confirming an arbitration award, the trial court must enter a judgment that may be "enforced as any other judgment in a civil action." D.C.Code § 16–4425(a). If a party's request for enforcement, however, "involves a new dispute" that falls outside the scope of the award, "enforcement must be denied." *Hellman, supra,* 400 F.Supp. at 918. In *Hellman,* a union sought enforcement of an arbitration award ordering a printing company to rehire an employee that it had laid off after transferring work in violation of the collective bargaining agreement. *Id.* at 916. The company argued that it no longer had any work for the employee and that the "question raised [in the union's petition to confirm] is a new one." *Id.* at 917. The district court agreed that the "issue of whether the [printing company] must again rehire [the employee], in light of the alleged change in circumstances, is a proper subject for arbitration," and while the court could nonetheless confirm the award, it would not enforce it. *Id.* at 918.

██ In this case, we conclude that the Dodds' claim to pierce the corporate veil does not involve a new dispute "arising out of or relating to this contract, or the breach thereof"; it instead arises out of the Dodds' efforts to collect the arbitration award rendered in their favor. The Dodds have already submitted their contract claims against C & C to arbitration, and having been awarded a money judgment, they now seek to hold C & C's shareholders individually liable for the arbitration award on the theory that those shareholders essentially looted C & C.[2] Once the Dodds have "establishe[d] their right to a money judgment against [C & C]," the trial court may properly "examine whether that award c[an] be enforced against an individual shareholder." *District Council*

---

**2.** "A party seeking to disregard the corporate entity must prove by affirmative evidence that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetuate fraud or wrong." *Lawlor v. District of Columbia,* 758 A.2d 964, 975 (D.C.2000) (alteration and internal quotation marks omitted). As we have noted, "piercing the corporate veil relates to liability of *shareholders,* not liability of corporate officers." *Camacho v. 1440 Rhode Island Ave. Corp.,* 620 A.2d 242, 248 n. 20 (D.C.1993). The Girons claim that there is no unity of ownership or interest because Alex Giron is not a shareholder of C & C. The trial court held that "the [Dodds'] complaint asserts otherwise," and because "the motion before the court is a motion to dismiss, [ ] the facts in the complaint are taken as accurate at this stage." It may be that Alex Giron may establish a basis to dismiss the claim against him at a later stage, but at the pleading stage the trial court must "assume that the facts alleged are true." *Grayson v. AT & T Corp.,* 15 A.3d 219, 263 (D.C.2011).

No. 9 v. APC Painting, Inc., 272 F.Supp.2d 229, 240 (S.D.N.Y.2003).

■ We find additional support for this conclusion from federal cases in which the courts have asserted jurisdiction over actions to collect an arbitration award through piercing the corporate veil.[3] *See Carte Blanche (Singapore) v. Diners Club Int'l, Inc.*, 2 F.3d 24, 25–28 (2d Cir.1993) (enforcing an arbitration judgment against a subsidiary corporation by piercing the corporate veil to hold the controlling parent corporation liable); *Schattner v. Girard, Inc.*, supra, 668 F.2d at 1369 (allowing a minority shareholder to bring a claim to pierce the corporate veil and a hold a co-shareholder liable for an arbitration award); *Allied Chemical Carriers, Inc. v. National Biofuels LP*, No. H–10–1109, 2011 WL 2672512 (S.D.Tex. July 7, 2011) (allowing a claim to pierce the corporate veil to collect an arbitration award); *District Council No. 9, supra*, 272 F.Supp.2d at 240 ("[V]eil-piercing may be available *after* a union establishes their right to a money judgment against the corporate entities." (alterations and internal quotation marks omitted)); *Northern Tankers (Cyprus) v. Backstrom*, 967 F.Supp. 1391, 1394–95, 1398 (D.Conn.1997) (noting that the district court has jurisdiction over an action to collect an arbitration award through a claim to pierce the corporate veil). Because the Dodds' amended complaint is a separate claim to enforce the arbitration award and raises no new issues that are subject to the arbitration agreement, the trial court did not err in asserting jurisdiction and denying the Girons' motion to compel arbitration.

■ The Girons argue not only that the Dodds' amended complaint belongs in arbitration but that the allegations contained therein are "nearly identical" to those already submitted in arbitration against the Girons as individuals, and therefore the Dodds are precluded from bringing these same claims again. The Girons are correct that a party whose claims have been— or should have been—decided in arbitration "may not then bring the same claims under new labels." *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C.1999) (quoting *Schattner, supra*, 668 F.2d at 1368). The Girons, however, mischaracterize the allegations in the Dodds' amended complaint. Although the Dodds named the Girons as defendants in their statement of claim submitted in arbitration, in doing so, they did not attempt to pierce C & C's corporate veil. Rather, the Dodds proceeded under a theory that C & C was an undisclosed principal. The arbitrator dismissed the claims against the Girons as outside the scope of arbitration, finding that the Dodds knew they were dealing with a corporate entity, and neither Carlos Giron nor Alex Giron were parties to the contract. The arbitrator herself clarified that no veil-piercing claim had been submitted to arbitration. An arbitrator's determination of whether an issue has been submitted to her for arbitration "is accorded a significant amount of deference," *Certain Underwriters, supra*, 967 A.2d at 173–74, and there is no reason not to defer to her determination here.

The arguments advanced by the Girons further suffer from an internal inconsistency. By arguing that the claims in the Dodds' amended complaint should have

---

**3.** Because the Federal Arbitration Act is "substantially similar to the District's act," we may look to federal precedent for guidance. *Hercules, supra*, 592 A.2d at 1072 (internal quotation marks omitted). "[F]ederal court decisions construing and applying the federal arbitration act may be regarded as persuasive authority in construing and applying the corresponding provisions of the District of Columbia arbitration act, so long as there is no material difference in the statutory language between the two acts." *Id.* at 1073.

been—and in fact already were—submitted to arbitration, the Girons take a position opposite the one they took in the earlier arbitration proceeding. In response to the Dodds' original statement of claim against the Girons as individuals, the Girons filed a motion objecting to the jurisdiction of the arbitrator on the grounds that they as individuals were not parties to the contract, and thus any dispute between them and the Dodds was not subject to arbitration. They now argue that the claims against them in the Dodds' amended complaint—claims they consider to be the same as those already submitted to and rejected by the arbitrator—should proceed in arbitration. The Girons cannot have it both ways.

### B. The Trial Court's Reliance on *Schattner*

In its order denying the Girons' motion to compel arbitration, the trial court based its entire analysis on *Schattner, supra,* 668 F.2d 1366, and the Girons take issue with that reliance, contending that *Schattner* created a rule with no application to this case and the trial court misunderstood its reasoning.

Robert Schattner, a dentist and inventor, prevailed in arbitration against Girard, Inc., a company with which he had a licensing agreement. When he sought to confirm the arbitrators' award in federal district court, he requested that the court pierce the company's corporate veil to hold the president and CEO individually liable. *Schattner, supra,* 668 F.2d at 1367. Although the trial court did not find this claim precluded by the arbitration proceeding, it found that Schattner was estopped from holding Girard's shareholder liable for Girard's debts because Schattner himself was a minority shareholder. *Id.* at 1369. The court of appeals rejected "the overly narrow standard applied by the district court because a rule that minority shareholders may not seek to hold dominant shareholders liable for corporate debts would trap unwary creditors who might accept a few shares of stock as partial compensation for a debt." *Id.* at 1370. According to the *Schattner* court, "[t]he better rule is that under appropriate circumstances a party is not precluded from piercing the veil of a corporation *even though* he is a minority shareholder." *Id.* at 1371 (emphasis added). Because "it was only when it became clear that Girard could not make good on the arbitration award that the issue of veil-piercing became ripe for consideration," the court of appeals remanded the case to give Schattner an opportunity to "press his claim." *Id.* at 1369–70.

According to the Girons, the trial court erred in applying *Schattner* here because *Schattner* is "*not* about whether a court has jurisdiction to hear" a veil-piercing claim and "the *Schattner* court based its entire ruling" on the fact that the plaintiff "was a shareholder of the defendant corporation." It is the Girons who misread *Schattner*. The *Schattner* court did not create a rule limited to minority shareholders seeking to pierce the corporate veil; it proposed a broader rule that would not *exclude* minority shareholders from piercing the corporate veil to collect an arbitration award. *Schattner* includes many significant facts analogous to the case here. Like Robert Schattner, the Dodds arbitrated their claims and were awarded a money judgment. Also like Schattner, the Dodds sought to confirm their arbitration award in trial court when it became clear that C & C would not pay. Finally, both Schattner and the Dodds sought to enforce the arbitration judgment through a claim to pierce the corporate veil to impose shareholder liability. With these key similarities and with little precedent from this court as a guide, the trial judge did not err

in applying *Schattner's* reasoning to the Girons' motion to compel arbitration of the Dodds' amended complaint.

Accordingly, we affirm the trial court's order taking jurisdiction over the Dodds' amended complaint without ordering the parties to proceed once again with arbitration.

*So ordered.*

