ERIC T., et al., Appellants,

v.

NATIONAL MEDICAL ENTERPRISES, INC., et al., Appellees.

Nos. 95–CV–1118, 96–CV–12, –77, –1438, –1439, –1609, & –1874.

District of Columbia Court of Appeals.

Argued June 22, 1997.
Decided Aug. 21, 1997.

E. David Hoskins, with whom Kenneth D. Pack, Baltimore, MD, and John Jude O'Donnell, Washington, DC, were on the brief, for appellants/cross-appellees.

F. Joseph Warin, with whom Julia A. Dahlberg and Thomas G. Hungar, Washington, DC, were on the brief, for appellee Psychiatric Institutes of America, Inc.; Paul D. Krause and Carol Ann Petren, Washington, DC, for appellees Psychiatric Institute of Montgomery County, Inc., Psychiatric Institute of Washington, D.C., Springwood Psychiatric Institute, and Tidewater Psychiatric Institute, Inc.; Andrew E. Vernick and Michael K. Wiggins, Annapolis, MD, for appellees Peter R. Cohen, M.D., Suzanne E. Kerney, M.D., Thomas Lustberg, M.D., Thomas Lustberg, M.D., P.A., William Stran McCurley, M.D., Ralph S. Ryback, M.D., and Associated Mental Health Professionals; Jeffrey J. Hines and Danell Palladine Dean, Washington, DC, for appellees Lawrence Greenwood, M.D., and Clare Stroker, M.D.; Thomas V. Monahan, Jr. and Susan T. Preston, Baltimore, MD, for appellee C. Gibson Dunn, M.D.; Robert W. Goodson and William J.

Carter, Washington, DC, for appellee Contemporary Psychiatric Services—Bruce Alan Kehr, M.D., P.A.; and Lawrence K. Gustafson for appellee National Medical Enterprises, Inc.

Andrew E. Vernick, Annapolis, MD, with whom Thomas V. Monahan, Jr. and Susan T. Preston, Baltimore, MD, were on the brief, for appellees/cross-appellants Thomas Lustberg, M.D., Thomas Lustberg, M.D., P.A., and C. Gibson Dunn, M.D.

Before FERREN, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

These consolidated appeals and cross-appeals arise from suits brought by former patients at certain psychiatric hospitals, and by parents of former patients, against various corporate entities which operate or control these hospitals and against individual psychiatrists who treated the complaining patients. In their complaints, the plaintiffs have alleged medical malpractice, fraud, civil conspiracy, and a number of other torts. In each case, a trial judge dismissed the complaint pursuant to the doctrine of *forum non conveniens*, which is codified in this jurisdiction in D.C.Code § 13–425 (1995). Dismissal was conditioned on an agreement by each defendant to waive any statute of limitations defense which that defendant may have in an appropriate forum.

On appeal, the plaintiffs contend that the alleged conspiracy said to be at the heart of all of these cases was directed and controlled from the headquarters of the principal corporate defendants in the District of Columbia, and that the trial judges abused their discretion in holding that the District of Columbia is an inconvenient forum. We discern no abuse of discretion.

In separate cross-appeals, two physician-defendants who do not live or presently practice in the District of Columbia, and who had filed motions to dismiss the complaints against them for lack of personal jurisdiction or, in the alternative, for *forum non conveniens*, contend that the trial court erred by ruling solely on the latter ground and by requiring each physician to waive any limita-

tions defense without first determining that the court had personal jurisdiction over him. We agree, vacate the conditional orders of dismissal as to these defendants, and remand their cases to the trial court for further proceedings.

## I.

## THE TRIAL COURT PROCEEDINGS

The plaintiffs have alleged in their complaints that defendant National Medical Enterprises, Inc. (NME) master-minded a nationwide scheme to defraud certain federal medical insurance programs, including Medicare, Medicaid, and CHAMPUS, as well as private health insurers, by causing these entities to pay for unnecessary and inappropriate hospitalizations of psychiatric patients. According to the plaintiffs, NME and its subsidiary, Psychiatric Institute of America (PIA), conspired with various local hospitals and psychiatrists to admit patients to NME-owned psychiatric hospitals when those patients did not require in-patient treatment. The plaintiffs claim that once a patient had been admitted, the defendants contrived to ensure that he or she would not be discharged until the patient's insurance benefits had been exhausted.

Following an investigation, the United States Attorney filed a criminal information against PIA and others in the United States District Court for the District of Columbia. On June 29, 1994, PIA admitted its guilt of the offenses charged in the information and entered a plea of guilty pursuant to a negotiated plea agreement. PIA was ordered to pay substantial fines and penalties.

Following the disposition of the criminal case against PIA, the law office of Peter Angelos, which represents the appellants in these cases, conducted an advertising campaign designed to apprise possible victims of PIA's fraudulent scheme of their rights and to offer the law firm's services to those who might be interested in seeking judicial redress. Beginning on March 17, 1995, the Angelos firm filed more than 200 suits in the Superior Court on behalf of former patients at NME-owned psychiatric hospitals in the District of Columbia, Maryland and Virginia,

and on behalf of parents of some of the patients. The defendants in each of these suits included NME, PIA, and the corporations that operated the local hospitals to which the complaining patients had been admitted. In some—but not all—of these cases, the complaints also named treating physicians as defendants.

Of the suits brought by plaintiffs' counsel, approximately fifty-eight involved patients who received treatment exclusively in the District of Columbia at the Psychiatric Institute of Washington (PIW). Those fifty-eight cases are not directly affected by these appeals. The remaining cases—145 in number, according to the brief for appellees—were dismissed by a total of seven Superior Court judges on the grounds of *forum non conveniens*.[1]

These dismissals have generated numerous appeals and, on January 24, 1997, the five appeals presently before us were designated as "lead" cases and consolidated for appeal. In each of these five cases, the plaintiffs are non-residents of the District of Columbia.[2] In all but one case, the patient was hospitalized exclusively in facilities outside the District.[3] In the four cases in which physicians were joined as defendants,[4] all physician-defendants are non-residents of the District, and none presently practices medicine in the District. The local hospitals that have been joined as defendants likewise have no offices in the District.

NME and PIA are incorporated in Nevada and Delaware respectively. Their corporate headquarters are located in California. These defendants presently maintain no employees or offices in the District, but both corporations are alleged to have transacted business in this jurisdiction at the time of the alleged conspiracy which resulted in PIA's criminal conviction.

## II.

### THE *ERIC T.* DECISION

On July 28, 1995, Judge Ann O'Regan Keary dismissed Eric T.'s complaint on *forum non conveniens* grounds in a thoughtful and thorough oral decision. Judge Keary began by noting that "at bottom, the claim of injury to Eric T. is a medical one" which centered on his "improper treatment at the hands of medical professionals who detained him, and perhaps admitted him improperly, to a psychiatric facility." This was so, the judge explained, regardless of whether or not the defendants harbored a fraudulent intent and engaged in a conspiracy to enhance corporate revenues. The judge further noted that Eric T. and his parents were residents of Maryland, and that little weight should be accorded to their choice of forum.

The judge then addressed in turn the relevant "private" and "public" interest factors specified in the applicable case law. *See, e.g., Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–09, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947); *Mills v. Aetna Fire Underwriters Ins. Co.,* 511 A.2d 8, 10 (D.C.1986).[5] With

---

1. According to the appellees, 127 of the 145 dismissed cases were brought exclusively by non-resident plaintiffs against exclusively non-resident defendants.

| | | |
|---|---|---|
| 1. | 95–CV–1118 | Eric T. (and his parents) |
| 2. | 96–CV–12 | Rebecca Hood |
| 3. | 96–CV–77 | Paul B. Hitchens III |
| 4. | 96–CV–1439 & 96–CV–1874 | Catherine Schoeny Heather Schoeny (Catherine's mother) |
| 5. | 96–CV–1438 & 96–CV–1609 | Tabitha L. Kirk |

3. Eric T. was hospitalized once at PIW (in Washington, D.C.) and four times in Montgomery County, Maryland. Ms. Hood was hospitalized in Virginia Beach, Virginia. Mr. Hitchens and Ms. Schoeny were both hospitalized in Montgomery County, Maryland. Ms. Kirk was hospitalized in Leesburg, Virginia.

2. The residence of each plaintiff is shown below:

Gaithersburg, MD

Virginia Beach, VA
Baltimore, MD
Laurel, MD
Columbia, MD

Hedgesville, VA

4. *Eric T., Hitchens, Schoeny* and *Kirk.*

5. The "private interest" factors most relevant here include (1) the convenience of the parties; (2) the relative ease of access to evidence, includ-

respect to the private interest factors, the judge concluded that because most of Eric T.'s hospitalizations were in Maryland [6] and because most of the parties and witnesses were localized in Maryland, the convenience of the parties in terms of ease of access to witnesses and documents favored trial in Maryland. Without specifically finding that the plaintiffs intended to vex or oppress the defendants by electing to bring the suit in the District of Columbia, she stated that their choice of forum could be viewed as an "obvious attempt to avoid the Maryland arbitration system" and to litigate instead in the District, "where we are unfettered by any type of tort reform."

Turning to the "public interest" factors, the judge found that they "overwhelming[ly]" favored trial in Maryland. She reasoned, in pertinent part, as follows:

> We are also seeing a high incidence of filings in cases where one sees litigants who had a choice of forum and are choosing the District of Columbia. Some perhaps to avoid the neighboring jurisdiction's tort reform. Some also to seek speedy resolutions in that this court has had some success in reducing delay in its civil calendars. Whatever the reason, the District has become a very desirable forum and its dockets are quite clogged at this point.

> It is also true that as a type, medical malpractice cases, particularly one as complex as this and as multi-faceted as this, present one of the most burdensome types of cases for the judiciary to deal with. The length of the case, both in terms of the period of time involved in discovery, the variety of issues which must be resolved

by the court in motions practice prior to the setting of a trial, and the actual trial of the case which usually takes two to four weeks, if not longer, is very significant and these are important factors that the court must take into consideration.

\*   \*   \*   \*   \*   \*

> Maryland, I believe, does have a significant interest in this case. All of the doctors were Maryland residents, including the doctor who treated Eric T. at PIW. The vast majority of his treatment was in Maryland and Maryland, unlike this jurisdiction, has spoken legislatively as to its desire to provide a certain mechanism to deal with litigation related to medical treatment. So I think there's a strong local interest in that controversy—the controversy of Eric T.'s treatment, four-fifths of which was in the State of Maryland, being decided by that jurisdiction.

> The unfairness of imposing the burden of jury duty on the citizens of this forum also is a compelling one to the Court. As I've indicated, we have a burgeoning case load, both in our civil and criminal calendars and it is significant given the nature of this type of case and the burden on our dwindling jury pool, that we avoid requiring the citizens of the jurisdiction to shoulder the burden of a multiple-week presence for jury duty in a case which this jurisdiction does not have a significant [interest], even though there was some period of treatment in this jurisdiction.[7]

Judge Steffen W. Graae likewise dismissed the other four cases on *forum non conve-*

---

ing the availability of witnesses; (3) the enforceability of a judgment, if obtained; and (4) any evidence that the plaintiffs attempted to vex, harass or oppress the defendants by their choice of forum. *See Mills,* 511 A.2d at 10 (citations omitted). Relevant public interest factors include (1) administrative difficulties arising when local dockets are congested with foreign litigation; (2) the local interest in having localized controversies decided at home; (3) the unfairness of imposing the burden of jury duty on citizens of a forum having no relation to the litigation; and (4) the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction. *Id.*

6. The judge noted that the plaintiff's single hospitalization in the District (out of a total of five hospitalizations) constituted a significant connection with the District that most of the other cases lacked, but she nevertheless found this contact to be insufficient in light of the other circumstances.

7. Judge Keary further noted that the case would turn in substantial part on questions of Maryland law, which would be more appropriately resolved by the courts of that state. She also addressed a number of less apposite *Gulf Oil* factors, but we need not relate that discussion here.

*niens* grounds. These appeals and cross-appeals followed.

## III.

## THE PLAINTIFFS' APPEALS

### A. *Standard of review.*

■ In reviewing the trial courts' orders dismissing these complaints, our standard of review is deferential.

> We have repeatedly held that trial court rulings on *forum non conveniens* motions are entitled to receive considerable deference from this court. We will not reverse such a ruling unless presented with clear evidence that the trial court abused its broad discretion.

*Jenkins v. Smith,* 535 A.2d 1367, 1369 (D.C. 1987) (en banc) (per curiam) (citations omitted); *Smith v. Alder Branch Realty Ltd.,* 684 A.2d 1284, 1285–86 (D.C.1996). "[W]here the [trial] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981) (citations omitted). An appellate court must not "los[e] sight of this rule, and substitute its own judgment for that of the [trial] court." *Id.* We have characterized the reversal of a discretionary decision based on *forum non conveniens* as an "unusual step," *Dunkwu v. Neville,* 575 A.2d 293, 294 (D.C. 1990), and we have "only rarely" set aside rulings "either way." *Jenkins, supra,* 535 A.2d at 1370.[8]

■ Where, as here, "it is shown that neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action, the burden normally allocated to the defendant to demonstrate why dismissal is warranted for *forum non conveniens* rests instead upon the plaintiff to show why it is not." *Mills, supra,* 511 A.2d at 11 (citation omitted). In such cases, "this court has emphasized the decisiveness of the public interest in reducing the volume of cases on our overcrowded court calendars." *Id.* (citations omitted).

■ The deferential standard of review does not mean that this court will simply rubber-stamp the trial court's ruling. "[O]ur review of rulings on *forum non conveniens* motions includes an independent evaluation of … [both] private and public factors." *Jenkins, supra,* 535 A.2d at 1369 (citation and internal quotation marks omitted). But this "independent evaluation" is not to be confused with *de novo* review. Rather, "we apply close scrutiny to the specific factors identified and evaluated by the trial court; once we are satisfied that the trial court took the proper factors into account, we adopt a deferential approach in determining whether the trial court's decision fell within the broad discretion committed to it." *Smith, supra,* 684 A.2d at 1287 (citation and internal quotation marks omitted).

### B. *General considerations.*

Before addressing the private and public factors which govern *forum non conveniens* motions, we think it important to focus, as Judge Keary did, on two considerations which are central to these cases and which affect all or most of the specific issues which the parties have raised.

First, as Judge Keary recognized, the burden will be on the plaintiffs to show that medical malpractice occurred, and there can be no recovery absent such a showing.[9] According to the plaintiffs, "[a]t its heart, this case is about a conspiracy to defraud patients at NME's psychiatric hospitals." "This

---

8. Several of our recent reversals of discretionary *forum non conveniens* rulings have involved denials of such motions by the trial court, despite apparent attempts at forum-shopping by non-resident plaintiffs seeking to sue non-resident defendants. *See, e.g., Dunkwu, supra,* 575 A.2d at 294–97, *Kaiser Found. Health Plan of Mid-Atlantic States, Inc. v. Rose,* 583 A.2d 156, 158–59 (D.C.1990).

9. Even if we were to assume that a plaintiff could recover for fraud without proving malpractice—a somewhat improbable scenario on the present record—he or she would have to show that fraudulent representations were made to him or her in Maryland or Virginia. In any event, the plaintiffs have apparently conceded in their brief that proof of malpractice will be required.

case," however, is not a single class action; 145 complaints have been dismissed by the Superior Court on *forum non conveniens* grounds. In order to prevail, each plaintiff must establish that in light of his or her medical records, family background, personal history, behavior, and symptoms he or she received inadequate psychiatric care. Each trial will therefore entail a detailed review of the plaintiff's background and treatment, with experts on both sides offering opinions as to whether the treatment of that individual plaintiff conformed to the applicable standard of care.

In four of the five cases before us, all of the alleged malpractice occurred in Maryland or Virginia; in the fifth, *Eric T.*, only one of the plaintiff's five hospitalizations was in a facility in the District. These cases thus have the potential of bringing to the Superior Court 145 medical malpractice, fraud and conspiracy cases in which the events giving rise to potential liability occurred outside the District.

■ Second, none of the plaintiffs resides in the District. In such cases, we have accorded very little weight to the plaintiff's choice of forum. *Dunkwu, supra,* 575 A.2d at 294–95; *Mills, supra,* 511 A.2d at 10–11. Indeed, a non-resident plaintiff's choice of forum is "a comparatively minor factor." *Rose, supra,* 583 A.2d at 159 (citation omitted).

In *Dunkwu,* a Virginia resident brought suit in the Superior Court for medical malpractice allegedly committed in Virginia against her infant daughter by a physician licensed both in Virginia and in the District. The trial judge denied the defendant's motion to dismiss, but this court reversed, holding that the complaint should have been dismissed under the doctrine of *forum non conveniens.* We stated that if the plaintiffs were permitted to litigate in the Superior Court on the basis of such attenuated contact with the District, then "a motion of this kind [could] be defeated by a showing of very little more than that the [non-resident] plaintiff chose the courts of the District of Columbia as her forum." *Dunkwu, supra,* 575 A.2d at 294; *Rose, supra,* 583 A.2d at 158 (quoting *Dunkwu* ). In the present

case, the defendants do not reside or practice in the District and, at least insofar as medical malpractice is concerned, the nexus between the litigation and the District is even less substantial than in *Dunkwu.*

C. *The "private interest" factors.*

■ Because all of the plaintiffs and defendants in *Eric T.* are non-residents of the District, Judge Keary did not abuse her discretion in drawing the obvious conclusion that Maryland was a superior forum to the District in terms of the conventional "private interest" factors, i.e. the convenience of the parties, the relative ease of access to evidence, and related considerations. To be sure, Gaithersburg is not a great distance from the District, and we are dealing with a "relatively compact and closely interrelated metropolitan area." *Rose, supra,* 583 A.2d at 159 n. 7 (citation omitted); *see also Auerbach v. Frank,* 685 A.2d 404, 411 (D.C.1996); *Neale v. Arshad,* 683 A.2d 160, 163 (D.C.1996). Nevertheless, Judge Keary correctly identified the "convenience" factors and evaluated them in a rational manner. Under our standard of review, that was sufficient. *Smith, supra,* 684 A.2d at 1287.

■ Judge Keary also addressed, with commendable restraint and moderation, the question whether the plaintiffs had selected the District as a forum in order to avoid Maryland's "tort reform" restrictions. "One of the purposes of the doctrine of *forum non conveniens* is to avoid forum-shopping." *Id.* at 160. "[D]ismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law." *Piper Aircraft Co., supra,* 454 U.S. at 249 n. 15. Judge Keary's assessment of this factor—noting the realistic possibility that it is the prospect "of a significantly larger recovery that brings plaintiffs here," *Rose, supra,* 583 A.2d at 159–60 n. 5 (quoting trial judge's opinion)—was reasonable, and we will not second-guess her.

With respect to the issue of *forum non conveniens, Eric T.* obviously presents a somewhat stronger case for the plaintiff than the other cases before us do. On one occa-

sion, Eric T. was hospitalized in the District. One of the defendants in his case—PIW—is located in this jurisdiction. In contrast, there was neither a District of Columbia hospitalization nor a defendant currently practicing in the District in *Hood, Hitchens, Schoeny,* or *Kirk.* Moreover, several of the plaintiffs in the other appeals live much further from Washington, D.C. than Eric T. does,[10] and the treatment facilities involved in some of those appeals are located at some distance from the District.[11] Accordingly, our assessment of the "private interest" factors in *Eric T.* applies *a fortiori* to the other four cases.[12]

### D. *The "public interest" factors.*

Judge Keary was of the opinion that the "public interest" factors tilted "overwhelming[ly]" in favor of trying the *Eric T.* litigation in Maryland. Her conclusion is a reasonable one, and it applies with equal or greater force to the other four cases.

■ "This court has emphasized the public interest considerations in applying the doctrine of *forum non conveniens* to situations in which the plaintiff's choice of forum was between a District of Columbia court and a court of equivalent jurisdiction in one of the counties in the Metropolitan Area." *Carr v. Bio–Medical Applications of Washington,* 366 A.2d 1089, 1092 (D.C.1976) (citations omitted). "[T]here is a local interest in having localized controversies decided at home." *Piper, supra,* 454 U.S. at 260, 102 S.Ct. at 268 (quoting *Gulf Oil, supra,* 330 U.S. at 509, 67 S.Ct. at 843). The appeals before us all involve Maryland or Virginia plaintiffs who (with the partial exception of Eric T.) were

allegedly the victims of medical malpractice while hospitalized in Maryland or Virginia. Accordingly, if there was malpractice or other misconduct as alleged, it occurred in Maryland and Virginia hospitals at the hands of psychiatrists currently licensed only by those jurisdictions.

■ Moreover, the physician-defendants maintain their offices exclusively in Maryland or Virginia and are affiliated with professional associations in their home states. Maryland and Virginia have an obvious interest in protecting their health care providers from invalid claims. Further, each of these states has enacted "tort reform" legislation and has a significant interest in applying that legislation to malpractice claims that arise within its borders. *See Bledsoe v. Crowley,* 270 U.S.App. D.C. 308, 310–12, 849 F.2d 639, 641–43 (1988); *cf. Dunkwu, supra,* 575 A.2d at 296 (according substantial weight to Virginia's "governmental interest in capping liability for malpractice"). A state in which malpractice allegedly occurred also has an interest in deciding the validity of serious allegations against hospitals which do business in that jurisdiction and against physicians who are licensed to practice medicine there. *See Ussery v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.,* 647 A.2d 778, 780–81 (D.C.1994).[13]

The plaintiffs point out that PIA and NME had their principal offices in the District at the time of the wrongs alleged. They argue that "[t]he District of Columbia cannot turn a blind eye to fraudulent and tortious activities occurring within its borders because the District of Columbia has a public interest in protecting its citizens and its neighbors

---

**10.** *E.g.,* Rebecca Hood lives in Virginia Beach, Virginia and Paul Hitchens lives in Baltimore.

**11.** *E.g.,* Tabitha Kirk was hospitalized in Leesburg, Virginia and Ms. Hood in Virginia Beach.

**12.** We also note that the plaintiffs' theory that certain physician defendants (who do not reside or practice in the District) are amenable to suit in this jurisdiction rests solely or primarily on the allegation that these defendants participated in a conspiracy of which the District was the hub. Federal courts in the District "have applied the conspiracy theory of jurisdiction warily," *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 78 (D.D.C.1992) (citation omitted), and there is a substantial question, which we do

not attempt to resolve, as to whether the Superior Court has personal jurisdiction over certain defendants in these cases. It appears to be undisputed, on the other hand, that the defendants in each of the cases before us are amenable to suit either in Maryland or in Virginia.

**13.** In addition to their malpractice claims, the plaintiffs allege that the defendants made fraudulent misrepresentations to them regarding their condition. All of these alleged misrepresentations as to four of the patient-plaintiffs, and most of those as to the fifth (Eric T.), occurred in Maryland or Virginia, and it is those states that have an interest in doing something about any fraudulent conduct.

against such abuses." In our view, however, the action taken by the United States Attorney against PIA already has substantially vindicated the District's interest in punishing and deterring any relevant wrongdoing. The District can further protect its own citizens in the fifty-eight cases brought by residents of this jurisdiction; its interest in compensating non-residents as well is surely minimal.

Finally, these five cases do not stand alone. They are "lead" cases which are expected to determine where more than one hundred and forty similar suits will be tried or settled. The addition to the Superior Court's docket of such a large number of malpractice, conspiracy and fraud cases brought by non-resident plaintiffs against non-resident defendants would have a dramatic impact on that court's already formidable litigation burden.

"[I]n actions involving non-resident plaintiffs bringing claims arising outside the District of Columbia, this court has emphasized the decisiveness of the public interest in reducing the volume of cases on [the District's] overcrowded court calendars." *Mills*, 511 A.2d at 11 (citations omitted). This court has made it clear that "plaintiffs from other jurisdictions should normally resort to their own courts: The courts of the District of Columbia, burdened as they are, should not without good reason be asked to make inquiry concerning events happening outside their jurisdiction." *Frost v. Peoples Drug Store, Inc.*, 327 A.2d 810, 813 (D.C.1974). "[W]e are well aware that our courts are congested with litigation, and that to the extent we can alleviate the case load of our courts by dismissing foreign litigation, the courts can reach other cases more promptly." *Jimmerson v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.*, 663 A.2d 540, 546–547 (D.C.1995); *see also Rose, supra*, 583 A.2d at 159–60; *Dunkwu, supra*, 575 A.2d at 297. "[A]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origins." *Frost, supra*, 327 A.2d at 814 (quoting *Gulf Oil Corp., supra*, 330 U.S. at 508, 67 S.Ct. at 843).

If all of these actions were allowed to remain on the Superior Court's docket, then, as the corporate appellees point out in their brief, the Superior Court would be "hit with a veritable avalanche" of "idiosyncratic" litigation. Judge Keary estimated, as we have seen, that each of these trials would take two to four weeks. *Accord, Ted D. v. Psychiatric Inst. of Montgomery County*, No. C.A. 3581–95 (Super.Ct.D.C. Aug. 4, 1995) (Kennedy, J.) (trial would last at least three weeks); *see also Michele K. v. Psychiatric Inst. of Montgomery County, et al*, No. CA 3321–95 (Super. Ct. D.C. June 14, 1995) (von Kann, J.) (same). If only twenty of the 145 cases—fewer than one in seven—were to go to trial, and if each lasted three weeks, then, considering trial time alone, these cases, all of them focusing on the details of the treatment in Maryland and Virginia of residents of those states by physicians licensed in those states would require the investment of sixty weeks of Superior Court judges' time—well over a year!

Obviously, too, there is more involved here for each trial judge than three or four weeks spent on the bench in trial. We must also consider the time that the judge would have to devote to motions and matters other than the trial proper. Our appellate bench is likewise busy, and these cases would assuredly reach this court in some numbers. Finally, we are dealing here with potential jury trials, and in the words of Judge von Kann,

[i]t is very difficult to pick a jury in the District for a trial that lasts [three or four weeks]. We—you have to go through a lot of jurors to get folks who are available and able to devote that amount of time.... We have a shrinking population in the District of Columbia, and although we have abolished exemptions from jury duty, it is still difficult to get people who are willing to come in and serve for protracted periods of time. And when we do, it imposes a significant burden upon them.... And to dragoon D.C. residents into coming and sitting in this court for two or three or four weeks to hear how some Maryland providers improperly confined a Maryland resident, I think would be quite an improper imposition on our D.C. jurors.

*Michele K., supra* (oral ruling July 14, 1995).[14]

\*     \*     \*     \*     \*     \*

In all of these cases, the private interest factors, and especially the public interest factors, support the dismissal of the complaints on *forum non conveniens* grounds. Seven trial judges have so ruled in these or related cases, and we find no abuse of discretion here.

## IV.

## THE CROSS–APPEALS

Thomas Lustberg, M.D., a physician presently practicing only in Maryland,[15] is a defendant in the *Schoeny* case.[16] C. Gibson Dunn, M.D., a physician practicing only in Virginia,[17] is one of the defendants in the *Tabitha L. Kirk* case. Dr. Lustberg and Dr. Dunn rendered psychiatric care to Ms. Schoeny and Ms. Kirk when these plaintiffs were in-patients in psychiatric hospitals in Maryland and Virginia, respectively.

Dr. Lustberg and Dr. Dunn each moved the trial court to dismiss the action against him for lack of jurisdiction over his person. In the alternative, both defendants asked the court to dismiss on the grounds of *forum non conveniens*. In each case, Judge Steffen W. Graae ordered dismissal on the physician's secondary theory—*forum non conveniens*—but specifically declined to rule on the question of personal jurisdiction.[18] Each dismiss-

al was conditioned upon a waiver by the defendant of any applicable statute of limitations defense that "might have been available between the filing of these suits in the District of Columbia and the prompt filing of new suits in Maryland or Virginia."

The trial court imposed this condition because "[a] prerequisite for application of the doctrine of *forum non conveniens* is the availability of an alternative forum in which plaintiff's action may more appropriately be entertained." *Mills, supra,* 511 A.2d at 13 (citation omitted). We stated in *Mills* that

> [i]n the interest of justice, a court must retain such a case, no matter how inappropriate the forum may be, unless the court accepts the defendant's stipulation that he will not raise the defense of statute of limitations in the proposed alternative forum. RESTATEMENT (SECOND) OF CONFLICT OF LAWS Sec. 84 comment c (1971).

*Id. See also Begum v. Auvongazeb,* 695 A.2d 112 (D.C. 1997). We implicitly recognized in *Mills,* however, that such a condition could not be imposed if the court lacked personal jurisdiction over the defendant. *Id.* at 15 n. 9. We now make explicit the applicable legal principles which the court surely had in mind in the *Mills* footnote.

"The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to

---

**14.** In light of the significant interest of Maryland and Virginia in these cases, see pp. [757–58], *supra,* and because much of the District's interest has already been vindicated by the federal prosecution of PIA and by the fifty-eight cases brought by District residents, the "governmental interest" approach to choice-of-law issues, *see Rymer v. Pool,* 574 A.2d 283, 285 (D.C.1990), points to the application, in whatever forum the cases may be tried, of Maryland and Virginia law, at least insofar as the claims of fraud and malpractice are concerned. *Cf. Dunkwu, supra,* 575 A.2d at 296. But

> [w]e need not decide whether [Maryland or] Virginia law—with or without the cap on malpractice recovery—would apply if this suit[s] were tried in the District of Columbia; it is enough for our purposes to note that *"the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of*

*another jurisdiction"* is an important public interest in *forum non conveniens* analysis. *Id.* (emphasis in original) (citation omitted).

**15.** According to his 1995 affidavit, Dr. Lustberg treated patients in the District "ten years ago." He was also on the faculty of Children's Hospital.

**16.** Thomas Lustberg, M.D., P.A., is a separate defendant in *Schoeny*. We assume that P.A. stands for "Professional Association."

**17.** Dr. Dunn represented in his affidavit that he was licensed to practice in the District until 1988 or 1989, but that he never in fact practiced in this jurisdiction.

**18.** Judge Keary likewise declined to reach the issue of personal jurisdiction raised by some defendants in *Eric T.*

enter judgments affecting rights or interests of non-resident defendants." *Kulko v. California Super. Ct.*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (citing *Shaffer v. Heitner*, 433 U.S. 186, 198–200, 97 S.Ct. 2569, 2576–78, 53 L.Ed.2d 683 (1977)). "It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." *Id.,see also Pennoyer v. Neff,* 95 U.S. 714, 732–733, 24 L.Ed. 565 (1877); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[19] The constitutional requirement of personal jurisdiction over these defendants stems from their individual liberty interest "in not being subject to the binding judgments of a forum with which [they] have established no meaningful 'contacts, ties or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co., supra,* 326 U.S. at 319, 66 S.Ct. at 159–60.)

▄▄▄ Because the trial court's orders dismissing the cases against Dr. Lustberg and Dr. Dunn under the doctrine of *forum non conveniens* required the physician-defendants to waive their limitations defenses in Maryland and Virginia, these orders "impos[ed] a personal obligation or duty" upon them. *Kulko, supra,* 436 U.S. at 91, 98 S.Ct. at 1696. We are satisfied that, in the ab-

sence of personal jurisdiction, the trial court was without authority to place such a restriction on any party. The plaintiffs have provided us with no case law or plausible argument to the contrary,[20] and the trial court likewise cited no authority relevant to this issue. We conclude that the condition was erroneously imposed.[21]

## V.

## CONCLUSION

For the foregoing reasons, the orders of conditional dismissal as to Thomas Lustberg, M.D., Thomas Lustberg, M.D., P.A., and Gibson Dunn, M.D. are vacated, and their cases are remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court shall determine whether it has personal jurisdiction over these defendants. In the event that the court lacks personal jurisdiction over any defendant, the complaint against that defendant shall be unconditionally dismissed on jurisdictional grounds. If the court determines that it has personal jurisdiction over one or more of these defendants, then the previously entered order conditionally dismissing the complaint on the grounds of *forum non conveniens* shall be reinstated as to that defendant or defendants.

In all other respects, and as to all other parties, the orders appealed from are affirmed.

---

**19.** Although the District of Columbia is not a state, it is bound by the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–95, 98 L.Ed. 884 (1954). This court has applied *International Shoe*'s due process standard in controversies over personal jurisdiction. *See, e.g., Mouzavires v. Baxter,* 434 A.2d 988, 990–91 (D.C. 1981) (en banc) (per curiam), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

**20.** The plaintiffs assert that the physician-defendants waived their objection to personal jurisdiction by moving to dismiss the complaint for *forum non conveniens.* It is undisputed, however, that the defendants expressly challenged the personal jurisdiction of the court, and we know of no authority, and the plaintiffs have cited none, suggesting that a party's request, *in the*

*alternative,* to dismiss on inconvenient forum grounds constitutes a waiver of the primary contention that jurisdiction is lacking.

**21.** The physician-defendants have asked this court to hold, without a remand, that the Superior Court lacks personal jurisdiction over them. As yet, however, there has been no discovery in the Superior Court regarding the jurisdictional question. "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of [the trial court] by withholding information on its contacts with the forum." *El–Fadl v. Central Bank of Jordan,* 316 U.S.App.D.C. 86, 94, 75 F.3d 668, 676 (1996). Moreover, we do not have the benefit of trial court findings regarding the jurisdictional facts. Under these circumstances, a ruling by this court would be premature.

*So ordered.*[22]

---

**22.** Appellees' joint motion for judicial notice of certain Superior Court proceedings is granted. Appellees' joint motion to strike portions of appellants' brief is denied as moot.