*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CV-787

TRG CUSTOMER SOLUTIONS, INC. D/B/A
IBEX GLOBAL SOLUTIONS, APPELLANT,

v.

THEODORE SMITH, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CA-8572-16)

(Hon. Neal E. Kravitz, Trial Judge)

(Argued October 16, 2018                    Decided April 30, 2020)

*Nicholas T. Solosky*, Fox Rothschild, LLP, with whom *Rachel M. Severance*, and *Alexander Hernaez*, Fox Rothschild, LLP were on brief, for appellant.

*Mark G. Chalplin* for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and EDELMAN, *Associate Judge of the Superior Court of the District of Columbia.*[*]

EDELMAN, *Associate Judge*: This case comes before the court on appeal of the Superior Court's denial of Appellant's Motion to Compel Arbitration. The

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

Appellant, TRG Customer Solutions, Inc. d/b/a Ibex Global Solutions ("TRG"), claims that the trial court erred in denying its motion to stay Plaintiff Theodore Smith's employment discrimination lawsuit and to enforce an arbitration clause in the parties' employment agreement. We find, however, that TRG waived its right to arbitrate through its unexplained delay in asserting its arbitration rights and through its active participation in Smith's lawsuit. Accordingly, we affirm.

## I.    Factual and Procedural Background

On November 28, 2016, Theodore Smith filed suit against his former employer, TRG, alleging violations of the District of Columbia Human Rights Act. Smith claimed that his termination in February 2016 resulted from discrimination on the basis of his religion, as a member of the Church of Jesus Christ of Latter-Day Saints, and on the basis of his weight and appearance.

Smith began working for IBEX Global USA on March 5, 2012. As part of the hiring process, Smith signed a Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate. In 2013, Smith transferred to the Philippines at the request of IBEX. On June 15, 2013, IBEX asked Smith to sign two new employment agreements – one for his employment with IBEX Global USA and another for his

employment with IBEX's entity in the Philippines, TRG Global Solutions Philippines (d/b/a IBEX Global PH). The agreements included a mandatory arbitration clause and the same Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate that Smith had signed in 2012. The arbitration agreement stated, in part:

> The Company and Employee mutually consent to the resolution, by final and binding arbitration, of any and all claims or controversies ("claim") that the Company may have against Employee or that Employee may have against the Company or its officers, directors, partners, owners, employees or agents in their capacity as such or otherwise, whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this Agreement to Arbitrate (this "Agreement") or the breach thereof.

Mr. Smith was terminated from his position on February 3, 2016. Thereafter, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that his termination resulted from discrimination on the basis of religion and on the basis of his weight and appearance. On August 30, 2016, the EEOC closed its investigation and issued a Right to Sue letter to Smith, though TRG evidently did not receive notice or a copy of the letter. In response, Smith filed this lawsuit in Superior Court.

TRG responded to Smith's lawsuit by filing two motions to dismiss. On January 10, 2017, TRG filed its initial Motion to Dismiss, arguing that Smith's pending EEOC complaint divested the Superior Court of jurisdiction. While TRG's Motion to Dismiss referenced Smith's employment agreements, it did not ask the court to compel arbitration or mention the arbitration clause in any way. Smith filed a written opposition on January 25, 2017. The trial court ultimately denied TRG's motion on January 31, 2017, noting that the EEOC had ceased processing Smith's administrative claim and had provided him a Right to Sue letter authorizing the lawsuit.

On February 21, 2017 – three weeks after the court's denial of its first motion to dismiss – TRG filed a Motion to Dismiss for Forum Non Conveniens. This renewed effort to dismiss the case asked the Superior Court to dismiss Smith's lawsuit so that the parties could instead litigate the matter in the Philippines. In a Memorandum of Points and Authorities appended to this Motion, TRG focused on the substance of Smith's claims and the facts underlying his employment to argue that the relevant public and private interests favored resolution of this dispute in the Philippines, a nation that TRG contended had "an incredibly strong interest in adjudicating the claims [Smith] asserted in this matter." TRG cited specific provisions of Philippine labor and employment law to argue that that country

constituted an adequate alternative forum for litigation. While TRG attached a portion of one of Smith's employment contracts to its Memorandum of Points and Authorities, it once again failed to demand arbitration or even make mention of the arbitration clause. After Smith filed a written opposition (supported by an affidavit and several dozen pages of exhibits), the trial court denied TRG's forum non conveniens motion on March 10, 2017.

Its two motions to dismiss having been denied, TRG filed its Answer to Smith's Complaint on March 23, 2017. Although the Answer denied the bulk of the factual assertions made in the Complaint, it admitted that Mr. Smith had signed two employment agreements. TRG's answer also pleaded twenty-three affirmative defenses. None of these affirmative defenses asserted that the contractual arbitration clause barred Smith's lawsuit or otherwise referenced arbitration in any fashion.

The day after TRG filed its Answer, the parties appeared before the trial court for an initial scheduling conference. At that hearing, TRG agreed to a "Track 3" Scheduling Order. Track 3 Orders set forth the lengthiest discovery period permitted in the Superior Court Civil Division, and are thus reserved for complex cases involving extensive discovery. *See, e.g.*, *Forti v. Ashcraft & Gerel*, 864 A.2d 133, 135 (D.C. 2004). This Order scheduled discovery throughout the remainder of the

2017 calendar year, with further dispositive motions to be filed in October 2017 and a mediation session to occur in November or December.

On May 3, 2017 – over five months after the filing of the Complaint – TRG filed a Motion to Compel Arbitration. The Motion claimed for the first time that the arbitration provision in Smith's employment contract encompassed this dispute, and requested that the Superior Court stay the lawsuit and instead compel arbitration. TRG's Motion did not attempt to explain or justify the five-month delay in asserting its putative right to arbitration.

The trial court denied TRG's Motion to Compel in a written order issued on June 9, 2017. The Order concluded that TRG's "active litigation of the case constitute[d] an implicit waiver of any rights the defendant may have had to enforce the [arbitration] provisions." The trial judge noted that in the five months that passed between the filing of the lawsuit and the assertion of the right to arbitration, TRG had been "a very active participant in the litigation" and "the driving force behind all of the early motions practice in the case," while Smith had "been forced to go

toe-to-toe with [TRG] in the judicial arena for many months and almost certainly at significant expense." TRG timely appealed the Superior Court decision.[1]

## II. Legal Framework

On appeal, TRG argues that the trial judge erred in finding that it waived its contractual right to arbitrate through its participation in this litigation.[2] Whether a party has waived its right to arbitration constitutes a question of law that this court considers *de novo*. *Hercules & Co. v. Beltway Carpet Servs. Inc.*, 592 A.2d 1069, 1073 (D.C. 1991).

As codified in the District of Columbia Revised Uniform Arbitration Act ("RUAA"), D.C. Code §§ 16-4401 to 16-4432 (2012 Repl.), and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (1996), District of Columbia and federal law

---

[1] A denial of a motion to compel arbitration is considered final, and is thus subject to interlocutory appeal. *Biotechpharma, LLC v. Ludwig & Robinson, PLLC*, 98 A.3d 986, 990 (D.C. 2014).

[2] TRG also maintains that the trial court erred in even reaching this issue rather than leaving it to the arbitrator. TRG did not, however, raise this issue in the Superior Court, and we therefore deem it waived for the purposes of this appeal. *2301 M St. Coop. Ass'n v. Chromium LLC*, 209 A.3d 82, 88 (D.C. 2019) (citing *Cannon v. District of Columbia*, 569 A.2d 595, 596-97 (D.C. 1990)).

broadly protect the right of a party to contract for the use of arbitration as an alternative dispute-resolution mechanism. The RUAA provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable," D.C. Code § 16-4406, and permits judicial enforcement of agreement to arbitrate, § 4407. Our case law has expressed a strong preference favoring arbitration when a contract contains an arbitration clause. *See, e.g.*, *Carter v. Cathedral Ave. Coop., Inc.*, 566 A.2d 716, 717 (D.C. 1989) (describing a "presumption of arbitrability" when a contract contains a clause that covers the asserted dispute); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, "[a] motion to compel arbitration invokes the well-established preference for arbitration when the parties have expressed a willingness to arbitrate." *Friend v. Friend*, 609 A.2d 1137, 1139 (D.C. 1992).

However, like any contract right, the right to arbitrate may be waived – either expressly or by implication. *See Hercules*, 592 A.2d at 1073; *see also Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987) (hereinafter "*NFCR*"). In evaluating whether such a waiver has occurred,

"[t]he essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *NCFR,* 821 F.2d 774; *see also Hercules*, 592 A.2d at 1073 (citing cases). A party to a lawsuit can effect such a waiver by actively participating in the litigation or by taking other actions inconsistent with the right to arbitrate. *Hossain v. JMU Props., LLC*, 147 A.3d 816, 823 (D.C. 2016); *Hercules*, 592 A.2d at 1075; *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966). In accordance with arbitration's favored status, courts must be "cautious" in concluding that a party to an arbitration agreement has abandoned the right to enforce it, *Hercules*, 592 A.2d at 1075, and must resolve any ambiguity regarding the scope of a waiver in favor of arbitration, *id.* at 1073.

This court has had few opportunities to evaluate the level of participation in a lawsuit necessary to waive arbitration. In *Hercules*, the defendant demanded arbitration in one of its first acts after the initiation of the lawsuit, filing a motion seeking to compel arbitration contemporaneously with the submission of its answer. 592 A.2d at 1070-71. The trial court ruled that the defendant waived its right to pursue arbitration under the contract by answering the complaint, serving (and later withdrawing) interrogatories, and filing a motion for summary judgment as to three non-arbitrable tort claims. *Id.* at 1071. This court disagreed, noting that the

defendant had raised arbitration as part of its initial pleadings; sought summary judgment and limited written discovery only as to claims not subject to arbitration; and did not attempt to use the lawsuit to gain any advantage from discovery or motions practice. *Id.* at 1074. In the end, we characterized the defendant's actions – filing an answer that allowed it to avoid the risk of a default accompanied by a motion to dismiss invoking its right to arbitration – as "mere participation" as opposed to "active participation" in the lawsuit, and held that such conduct did not support a finding of waiver. *Id.* at 1075.

This court and the United States Court of Appeals for the District of Columbia Circuit[3] have more frequently found, however, that a party's engagement with the litigation process waives its contractual right to arbitration. In *Cornell*, the D.C. Circuit affirmed a finding of waiver in a case that had proceeded for four months between the filing of the complaint and the motion for a stay in order to proceed to arbitration.[4] 360 F.2d at 513. In that time, the defendant had moved for a transfer of venue; filed an answer and a counterclaim; and conducted a limited amount of

---

[3] We have often found federal precedents interpreting the Federal Arbitration Act to be highly persuasive in cases involving the right to arbitration. *See, e.g.*, *Hercules*, 592 A.2d at 1073.

[4] *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512 (D.C. Cir. 1966), remains binding authority pursuant to *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).

preliminary discovery. *Id.* The D.C. Circuit held that the defendant, through its conduct, had waived its claim to arbitration, adopting the trial court's conclusion that "[t]he litigation machinery had been substantially invoked and the parties were well into the preparation of a lawsuit by the time (some four months after the complaint was filed) an intention to arbitrate was communicated by the defendant to the plaintiff." *Id.*

In *NFCR*, a case often cited by this court, *see Hossain*, 147 A.3d at 822-23; *Hercules*, 592 A.2d at 1073; *Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860, 863 (D.C. 2005), the D.C. Circuit likewise found that the moving party had waived its right to arbitration through its participation in the litigation. *NFCR*, 821 F.2d at 778. Although the parties in that case disputed when the defendant could have asserted its right to arbitrate, *id.* at 776, the defendant undoubtedly waited at least thirteen months to do so, *id.* at 773-74. Standing alone, this delay in demanding arbitration appeared inconsistent with an intent to arbitrate, as the defendant's "extended silence and much delayed demand for arbitration indicate[d] that [it] made a conscious decision to continue to seek judicial judgment on the merits" of the arbitrable claims. *Id.* at 777. In addition, the federal circuit based its finding of waiver on the defendant's conduct: filing an answer with fifteen affirmative defenses (and no mention of arbitration); participating in discovery; filing and litigating a motion for

summary judgment; and agreeing to set the case for trial. *Id.* at 775. In so doing, the defendant "had invoked the litigation machinery to an even greater extent" than did the defendant in *Cornell*. *Id.*

Similarly, in *Khan v. Parsons Global Servs.*, 521 F.3d 421 (D.C. Cir. 2008), the D.C. Circuit reversed the trial court's order to compel arbitration as a result of the defendant's waiver of its arbitration rights. Although the defendant had not sought discovery, it had filed and litigated a motion for summary judgment contending that the workmen's compensation system provided the plaintiff's only avenue for relief. *Id.* at 426-27. This effort to obtain a ruling requiring the plaintiff to pursue his claim in another forum waived the defendant's arbitration right, because "irrespective of other indicators of involvement in litigation, filing a motion for summary judgment based on matters outside the pleadings is inconsistent with preserving the right to compel arbitration." *Id.* at 428.

Our court most recently visited this issue in *Hossain,* 147 A.3d at 822. There, the defendant company moved to dismiss the case and compel arbitration sixteen months after the filing of a wrongful eviction action – and did so only after a nonjury trial had already begun. *Id.* at 818. Because the commencement of the trial and the defendant's participation in it made the waiver question "eminently clear," we saw

no need, on those facts, to define a general rule as to "whether an action invoked earlier than the beginning of trial can constitute 'litigation conduct.'" *Id.* at 822.

All of these decisions were deeply bound up in their individual circumstances; as we have previously observed, "the facts of each case will present different permutations of activities that may constitute 'litigation conduct.'" *Hossain*, 147 A.3d at 822. They do, however, set some parameters for separating "active participation" in litigation that waives a party's right to arbitrate from "mere participation" in a lawsuit that does not. Our case law makes clear that filing an answer or taking other steps to avoid the entry of a default cannot be characterized as inconsistent with an intention to assert an arbitration right, and thus does not establish a waiver. *See Hercules*, 592 A.2d at 1075. Beyond that, the relevant precedents have classified a wide range of conduct beyond the filing of an answer or initial responsive pleading – from filing a motion to change venue and conducting limited discovery, *see Cornell*, 360 F.2d at 513; to litigating a summary judgment motion aimed at forcing the plaintiff to rely on an alternative administrative remedy, *see Khan*, 521 F.3d at 426-28; to participating in a trial, *see Hossain*, 147 A.3d at 822 – as so inconsistent with the assertion of a right to arbitrate as to waive such a right.

In determining whether a party has waived its right to arbitration by actively participating in a lawsuit or taking other action inconsistent with that right, *see Cornell*, 360 F.2d at 512, these cases frequently return to the same themes. First, a party's unexplained delay in invoking a contractual right to arbitrate evinces an intent not to exercise that right. Once a lawsuit has been filed, a party's "dilatoriness or delay," *id.* at 514, or "extended silence and much delayed demand for arbitration," *NFCR*, 821 F.2d at 777, cut strongly in favor of a finding of waiver.[5] In addition, a party's attempt to use a judicial forum to obtain a favorable ruling before demanding arbitration often represents the type of active participation in litigation that waives that right. Thus, a party cannot make a "conscious decision to exploit the benefits of pretrial discovery and motion practice with relation to the arbitrable claims, that were fully available to it only in the judicial forum," using arbitration as a "strategy to manipulate the legal process" to get a "second bite" at a favorable outcome. *NFCR*, 821 F.2d at 776. *See also Khan*, 521 F.3d at 427 (holding that a party that has first sought relief through the judicial system "should not be able thereafter to seek compelled arbitration"). This aspect of the case law reflects a concern with gamesmanship, seeking to prevent a litigant from first resorting to judicial remedies

---

[5] Indeed, Congress intended to discourage such delay in the Federal Arbitration Act. *Cornell*, 360 F.2d at 514 and n.4.

while holding an arbitration clause in its back pocket in case its opening gambits fall short.[6]

## III. Analysis

In denying TRG's Motion to Compel Arbitration, the trial court found that TRG's conduct during the five months that the lawsuit had been pending waived its right to invoke the arbitration clause in the employment agreements. We agree.

To begin with, TRG's entirely unexplained delay in demanding arbitration as the lawsuit progressed cannot be squared with an intent to arbitrate. In contrast to the defendant in *Hercules*, TRG did not invoke arbitration as part of its first response to Smith's lawsuit. *See* 592 A.2d at 1070, 1073-74. Instead, TRG responded with two motions to dismiss; and while these motions referenced Smith's employment agreements, neither one of them demanded arbitration or even alluded to the arbitration clause. When TRG finally answered Smith's complaint, it did so in a pleading that admitted the existence of the signed employment agreements and that included twenty-three affirmative defenses – but that did not mention the agreement

---

[6] While prejudice to the party opposing the arbitration demand may be a relevant factor, prejudice need not be demonstrated in order to establish a waiver. *See, e.g.*, *Hossain*, 147 A.3d at 823.

to arbitrate, assert the arbitration clause or TRG's right to arbitrate as any type of defense, or even reserve the issue for subsequent consideration. *See Cornell*, 360 F.2d at 513 n.3 (noting that a party's participation in a lawsuit will not waive its right to arbitrate if it has demanded arbitration in its answer). TRG then appeared before the court for an initial scheduling conference and entered into a Track 3 Scheduling Order setting out an extended timeline for discovery, motions practice, and trial. Only after TRG had failed to prevail on two motions to dismiss, filed its answer, and appeared for the initial scheduling conference did it first raise with the court its supposed right to arbitration of this dispute.

By the time that TRG finally filed its Motion to Compel Arbitration, five months[7] had passed since the inception of the lawsuit, a period of time comparable to that in other cases in which courts have found a waiver. *See, e.g.*, *Cornell*, 360 F.2d at 513 (four months); *Zuckerman Spaeder, LLP v. Aufenberg*, 646 F.3d 919, 924 (D.C. Cir. 2011) (eight months). Significantly, TRG offers no explanation or excuse for its delay in demanding arbitration. *See NFCR*, 821 F.2d at 777; *Cornell*,

---

[7] TRG contends that its counsel communicated an intent to arbitrate to Smith's counsel somewhat earlier. As the D.C. Circuit has recognized, however, "[i]n his pre-trial huffery and puffery a party may float all sorts of intentions, serious or not; a court considering a question of forfeiture [of the right to arbitrate] is properly concerned only with intentions placed upon the record." *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 923 (D.C. Cir. 2011).

360 F.2d at 513-14.  In short, as the litigation progressed for five months, TRG undertook a number of responses to this lawsuit, but sat on its hands with regard to whatever arbitration rights it had.  This unexplained delay is plainly inconsistent with an intention to resort to arbitration, and supports the trial court's finding of a waiver.

On top of this extended period of unexplained silence, TRG actively litigated this case in a manner that firmly established the waiver of its right to arbitration.  As noted *supra*, TRG submitted two separate dismissal motions, filed an answer containing some two dozen affirmative defenses, and entered into a scheduling order contemplating a lengthy discovery period and further pretrial motions.  It is difficult to disagree with the trial court's conclusions that TRG acted as "a very active participant in the litigation" and was in fact "the driving force behind all of the early motions practice in the case."

TRG's forum non conveniens motion perhaps best exemplified the way in which it attempted to utilize the Superior Court's litigation machinery in a manner inconsistent with arbitration.  Such a motion necessarily invokes the authority of the trial judge to alter the course of the case, as "[t]he doctrine [of forum non conveniens] is one of common law origin and involves the exercise of an inherent

judicial power." *Walsh v. Crescent Hill Co.*, 134 A.2d 653, 655 (Mun. Ct. App. D.C. 1957). In this case, the motion argued that *litigation* should occur in *a court* in the Philippines. It cited to the law and procedures of the Philippines to show remedies available to Smith there. It maintained that a court in the Philippines should resolve the dispute and articulated the nature of that country's interest in resolving this case. Given that the nature of any forum non conveniens motion centers on determination of the most appropriate forum for resolving a dispute, *Eric T. v. National Med. Enters.*, 700 A.2d 749, 758 (D.C. 1997), the request to move litigation to another legal forum appears inherently inconsistent with the intent to arbitrate. "Forum non conveniens and arbitration are simply two divergent concepts." *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1350 (M.D. Fla. 2001). TRG's forum non conveniens motion engaged the court's authority in a manner akin to the motion for summary judgment in *Khan* and the motion for change of venue in *Cornell*, and thus represents the type of active participation in litigation that supports a finding of waiver.[8] *See also, e.g.*, *Tellez v.*

---

[8] We are not convinced by TRG's argument that, because its forum non conveniens motion did not involve consideration of the merits of the case, it did not actively participate in the lawsuit such that it waived its right to arbitrate. This court has observed that the resolution of forum non conveniens motions often requires an evaluation on the merits. *Rolinski v. Lewis*, 828 A.2d 739, 747 (D.C. 2003) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 527, 528 (1988)) ("In examining the accessibility of sources of proof and the availability of witnesses, a court typically 'must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties

*Madrigal*, 292 F. Supp. 3d 749, 759-760 (W.D. Tex. 2017) ("While the Court is mindful that Defendant did not necessarily seek a decision on the merits with his various motions to dismiss, the timing of the instant motion [to dismiss for forum non conveniens] strongly suggests that he was indeed relying on arbitration as a backup plan.").

TRG's vigorous motions practice and extensive participation in the lawsuit, as it remained entirely silent as to any intent to arbitrate for five months, animates our holding. TRG's actions seem to be those of a party that realized its unasserted arbitration rights too late, or that sought to resort to arbitration only upon realizing that the proceedings in court would not result in quick dismissal of the matter. Either way, we cannot characterize the totality of its actions as consistent with an intent to arbitrate. Rather, TRG's actions demonstrate the sort of "dilatoriness or delay" not endorsed by the case law of our jurisdiction. *See Cornell*, 360 F.2d at 514. Allowing a party to wait for five months before raising its right to arbitration, despite its otherwise "active participation" in the matter, would encourage gamesmanship and manipulation to the detriment of the opposing parties and the court's time and

---

are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.'"). Indeed, the forum non conveniens motion in this case invited consideration of the aspects of the merits identified in *Van Causwenberghe,* and both the motion and opposition relied upon extrinsic evidence attached as exhibits.

resources. *Compare NFCR*, 821 F.2d at 776. Arbitration clauses are not intended to serve as a backup plan for failed efforts to invoke the authority of the Superior Court, and may not be used as a "strategy to manipulate the legal process" to get a "second bite" at a favorable outcome. *Id.*[9]

---

[9] The D.C. Circuit's most recent discussion of this issue, in *Zuckerman Spaeder*, adopted an approach that obviated the need for any examination of a party's motivations and intent. 646 F.3d 919, 920 (2011). *Zuckerman Spaeder* acknowledged that the Circuit's prior analysis of the question of waiver via litigation conduct (from *Cornell* through *Khan*) employed an "inherently fact-bound analysis" that "established few bright-line rules," and recognized that its "reluctance thus far to define the standard further has imposed a cost upon both litigants and the district court." 646 F.3d at 922. Refocusing the question as one turning on the concept of forfeiture – the failure to assert a right in a timely manner – rather than on waiver, the D.C. Circuit then established a bright-line rule governing the timeliness of the assertion of the arbitration right in litigation: "A defendant seeking a stay pending arbitration [under federal law] who has not invoked the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss, has presumptively forfeited that right." *Id.* Under this standard, a defendant can overcome this presumption of forfeiture by showing that any delay did not prejudice the non-moving party. *Id.* at 923. The rule adopted in *Zuckerman Spaeder* has also found favor in other federal courts. *See, e.g.*, *Nelson v. Carl Black Chevrolet of Nashville, LLC*, No. 3:17-cv-00687, 2017 U.S. Dist. LEXIS 121714, at *8 (M.D. Tenn. Aug. 2, 2017); *Growtech Partners v. Accenture LLP*, 118 F. Supp. 3d 920, 928 n.3 (S.D. Tex. 2015).

We need not look to *Zuckerman Spaeder* to resolve this case, but nonetheless encourage parties to abide by its strictures, and to raise issues of arbitrability on the record at the first available opportunity. Such a practice will promote both judicial efficiency and the underlying purpose of arbitration as an alternative dispute resolution mechanism, and will avoid waiver or forfeiture of arbitration rights by parties wishing to assert them.

We hold, given the totality of the circumstances, that TRG's actions were inconsistent with its purported right to arbitration. Accordingly, TRG waived its right to invoke arbitration in this matter.[10]

## IV.   Conclusion

The trial court correctly found that TRG waived its right to invoke arbitration. For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*

---

[10]   Smith further argued, in the trial court and again on appeal, that the court should declare the arbitration agreement unconscionable and thus unenforceable. Because we find that TRG waived the right to interpose this agreement, we need not reach these issues.